A93A1795. HUNTINGTON v. FISHMAN.
(441 SE2d 444)

SMITH, Judge.

Michael G. Huntington brought suit against his former attorney, Jeffrey M. Fishman, for professional malpractice related to Fishman's handling of a personal injury action in which Huntington was the plaintiff. The trial court granted Fishman's motion for summary judgment, and Huntington appeals.

On April 30, 1987, Huntington was involved in an automobile collision with Lynn Pickard. Huntington contends that he incurred medical expenses exceeding $3,500 as a result. Pickard's insurer, Georgia Farm Bureau Mutual Insurance Company, initially offered $2,000 to settle Huntington's claim. In February or March 1989, Huntington hired Fishman to represent him in the matter. Fishman filed suit on Huntington's behalf on March 22, 1989. According to Huntington, Fishman failed to exercise due diligence in locating and perfecting service upon Pickard within the two-year statute of limitation for actions based on injury to the person. OCGA § 9-3-33. Fishman appears to concede that at some point he discontinued efforts to locate Pickard, but he asserts that Huntington refused to assume the financial responsibility for the expenses involved in that effort. Fishman maintains that Huntington instead instructed him to settle the claim. It is

Huntington's position, supported by affidavit, that Fishman never informed him that Pickard could not be located and that he therefore never refused to assume financial responsibility for paying an individual to perfect service. Fishman offers no affidavit or other evidence supporting his position regarding Huntington's knowledge of, or decisions regarding, the issue of late service on Pickard.

In July 1989, Fishman informed Huntington that he had been offered $2,500 to settle his claim. Huntington refused the offer, believing that his case was worth much more. Huntington contends that during a second conversation, Fishman again advised him to accept the settlement and further informed him that, if he did not do so, Fishman would no longer pursue the case. Huntington then agreed to settle his claim for $2,500. Essentially, it is Huntington's position that the settlement (hereinafter the "Fishman settlement") was inadequate because Fishman failed to diligently pursue Pickard and that otherwise there would have been no incentive for Fishman to advise Huntington to settle for only $2,500.

When Huntington went to Fishman's office to sign the settlement documents, he discovered that the $2,500 settlement was dependent upon his wife's willingness to forego any loss of consortium claim she might have against Pickard. The record does not indicate that Fishman represented Huntington's wife at any time, and Huntington states in his affidavit that he was not aware prior to this occasion that his wife could assert such a claim. Huntington then refused to accept the Fishman settlement and terminated Fishman.

Huntington then hired new counsel, Michael Warshauer. Huntington was informed by Warshauer that he was bound by the settlement negotiated by Fishman, at least to the extent of Huntington's claims. See, e.g., USCR 4.12. Warshauer has filed an affidavit affirming that it was, and continues to be, his opinion that Fishman settled Huntington's claims for $2,500 as a matter of law and that Huntington's decision to return the check did not change this result. Warshauer nevertheless managed to negotiate a final settlement (hereinafter the "Warshauer settlement") totalling $4,000 instead of the original $2,500. Warshauer contends that the difference reflects only additional negotiations regarding his wife's loss of consortium claim.[1]

---

[1] Huntington explains that he and his wife accepted the Warshauer settlement "because we were advised that the statute of limitations had run on our claim." Although it has no bearing on the issues presented on appeal, we note that the limitation period for actions based on loss of consortium is four years. The fact that the two-year limitation period may have run on Mr. Huntington's action for personal injuries due to lack of diligence in perfecting service on Pickard is of no consequence with respect to the viability of the derivative action for loss of consortium. See OCGA § 9-3-33; *Parrotte v. Christian*, 208 Ga. App. 823, 824 (2) (432 SE2d 255) (1993).

"[I]n a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. [Cits.]" *Rogers v. Norvell*, 174 Ga. App. 453, 457 (330 SE2d 392) (1985) (physical precedent, but quoted portion cited with approval in *Nix v. Crews*, 200 Ga. App. 58, 59 (1) (406 SE2d 566) (1991)). In an effort to negate the element of "proximate cause," Fishman relies on the affidavit of John Stell, attorney for Pickard's insurer, stating that "[a]t no time was I instructed . . . to file a motion to enforce a settlement agreement based upon the earlier acceptance by plaintiff . . . of the sum of $2,500.00 which he had rejected and returned to the insurer in August of 1989. Similarly, at no time did I inform the Huntington[s]' attorney, David Warshauer, of any plans to enforce the alleged settlement."

Warshauer filed an affidavit in response, stating, in pertinent part, as follows: "The return of the $2,500.00 check to Ms. Pickard's insurance company did not, in my opinion, terminate the settlement which had already been reached. I unquestionably recall that Mr. Stell agreed with this interpretation and understanding of the law. As a result, we then focused our attention on settling Mrs. Huntington's case and I endeavored to maximize her recovery for loss of consortium. I believe Mr. Huntington's case was worth substantially more than $2,500.00 but there was nothing I could do to improve his position because of the actions Mr. Fishman had already taken. I did threaten to get out of the [Fishman] settlement but used these threats only as a means of increasing the offer on Mrs. Huntington."

The trial court, relying on the holding of *Rogers v. Norvell*, supra, and the affidavit submitted by attorney Stell, granted summary judgment to Fishman. The trial court observed that "[a]lthough Mr. Warshauer contradicts Mr. Stell's affidavit in part, this does not negate the fact that at the time Mr. Huntington signed the release there was a viable action pending and the defendant's [attorney] had not filed any [motion] to enforce [the Fishman settlement]."

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In this case, Fishman argues that his actions were not the "proxi-

mate cause" of Huntington's claimed injury as a matter of law. Fishman offered no rebuttal evidence to overcome evidence indicating that Huntington was not responsible for the lack of due diligence in locating and perfecting service on Pickard. Instead, he argues that, as a matter of law, the Fishman settlement did not render Huntington's claims nonviable. To support this contention, Fishman relies on the literal language of the Warshauer settlement, which purports to settle "all" claims resulting from the collision between Huntington and Pickard, as well as an affidavit suggesting that Pickard's insurer never intended to file a motion to enforce the Fishman settlement at any time. We find such evidence insufficient to support a grant of summary judgment to Fishman.

The Warshauer settlement purports to settle "any and all claims, known and unknown, relating to the subject incident." However, it is undisputed that the Warshauer settlement, unlike the Fishman settlement, disposed of Mrs. Huntington's claims as well as any arguable claims Mr. Huntington may have had. This language merely begs the question whether an act of professional negligence by Fishman *preceding* the Warshauer settlement in fact rendered some, though not all, of the Huntingtons' claims nonviable.

With respect to evidence suggesting that Pickard's insurer had no intention of enforcing the Fishman settlement, we find this immaterial to any issue presented on appeal. This evidence does not prove that the Fishman settlement was in fact invalid as a matter of law.[2] Even if the Fishman settlement was unenforceable, it would appear, although we do not now decide, that Huntington's personal injury action no longer was viable as a matter of law due to the failure to exercise any diligence whatsoever in pursuing Ms. Pickard after the two-year limitation period had run. Neither party disputes this. Instead, they dispute whether attorney or client is to blame. We find that questions of fact remain as to whether Mr. Huntington's claims became nonviable at any time prior to Fishman's dismissal, and if so, whether those claims became nonviable due to professional malprac-

---

[2] As disclosed supra, the trial court's order suggests that the failure of Mr. Huntington to further litigate his claims in the "viable action pending" against Pickard was fatal to any potential cause of action he may otherwise have had against Fishman for malpractice, regardless of the substantive effect of the Fishman settlement. This is incorrect. The "viability" of a given claim in the present context refers only to the question of whether further litigation of that claim may lead to a favorable result as of the time prior counsel was dismissed from the case; it does not refer to the mere potential for continued litigation of a claim as a means of demonstrating conclusively the very futility of the effort. The cases relied upon by the defendant in this case do not use the term in a contrary manner. See *Rogers v. Norvell*, supra; *Hudson v. Windholz*, 202 Ga. App. 882 (416 SE2d 120) (1992). See also, e.g., *Nix v. Crews*, supra; *Mauldin v. Weinstock*, 201 Ga. App. 514 (411 SE2d 370) (1991); *Hendricks v. Davis*, 196 Ga. App. 286 (395 SE2d 632) (1990), overruled on other grounds, *Hardaway Co. v. Amwest Surety Ins. Co.*, 263 Ga. 697 (436 SE2d 642) (1993).

tice on Fishman's part.

Fishman's reliance upon *Rogers v. Norvell*, supra, is misplaced. The defendant attorney in *Rogers* clearly demonstrated that his former client's cause of action remained viable at the time he was dismissed from the case. Here, however, Fishman's burden on summary judgment has not been met. The evidence relied upon by Fishman shows, *at most*, that Warshauer, as his successor, did not force Pickard's insurer to file a motion to enforce the Fishman settlement, and it further suggests that there *may* have been some doubt by Pickard's insurer regarding the validity of the Fishman settlement as applied to Mr. Huntington's personal injury claims. We find this insufficient to negate any element of Huntington's prima facie case. See generally *Lau's Corp.*, supra; *Demarest v. Moore*, 201 Ga. App. 90 (410 SE2d 191) (1991). The trial court therefore erred in granting Fishman's motion for summary judgment.

*Judgment reversed. Beasley, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 11, 1994.

*Mohr & Farnham, David J. Farnham*, for appellant.
*Weener & Associates, Paul S. Suda*, for appellee.