A06A0093. GRAIVIER et al. v. DREGER & McCLELLAND et al.

(633 SE2d 406)

RUFFIN, Chief Judge.

Dr. Miles Graivier, Kathy Graivier, and Dr. Graivier's medical corporation, North Atlanta Plastic Reconstructive Surgery, P.C. ("NAPRS") (collectively, "the appellants"), sued attorney Richard Dreger and his law firm, Dreger & McClelland, for professional negligence, breach of fiduciary duty, and breach of an attorney employment contract. Dreger and his firm moved for summary judgment on all claims, and the trial court granted the motion. The

Graiviers and NAPRS appeal the trial court's ruling. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is appropriate when the evidence, viewed favorably to the nonmovant, demonstrates that no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law.[1] Construed in this manner, the record shows that Dr. Graivier, a plastic surgeon, is the sole shareholder of NAPRS, which provides cosmetic and reconstructive surgical services. In approximately 1995 or 1996, Dr. Graivier contemplated establishing his own surgical facility, and he spoke with Dr. Dale Duncan, an oral surgeon, about partnering in the facility. Dr. Duncan agreed, and the doctors decided to establish a limited liability corporation to manage the surgical center. Dr. Duncan suggested that they hire Dreger, whom he knew through the Rotary Club, to set up the corporation.

In the spring of 1997, the doctors met with Dreger to discuss the venture. According to Dr. Graivier, they told Dreger that each would collect their own fees and pay the expenses associated with their use of the surgical center. To the extent third parties used the facility, however, fees paid by the third party would be placed in an LLC account, from which expenses would be paid and any profits split between Dr. Graivier and Dr. Duncan. As described by Dr. Graivier, "the LLC was just to be the management company as a means to employ the common employees. That's all the LLC essentially was to be, and the only profits that were to be in the LLC [were] from third-party users."

On May 5, 1997, Dr. Graivier, on behalf of NAPRS, and Dr. Duncan, on behalf of Dale R. Duncan, D.D.S., P.C. ("Duncan P.C."), executed an operating agreement for North Atlanta Surgery Center, LLC ("the LLC"). The overriding purpose of the LLC was to operate "an outpatient surgery center." Exhibit A to the agreement specified that NAPRS and Duncan P.C. each had a 50 percent interest in the LLC's profits and losses.

The doctors first began performing surgeries at the facility in September 1998. On May 5, 1999, Dr. Duncan wrote Dr. Graivier, complaining that the doctors were not properly accounting for the LLC's revenues. Specifically, Dr. Duncan asserted that because their individual professional corporations were billing surgical patients for fees associated with use of the surgical center, "approximately $200,000 of revenues owed to [the LLC] [had] been incorrectly appropriated." Dr. Duncan requested "the immediate cessation of the practice of billing and collecting for outpatient [surgical] services through our

---

[1] See *Rhone v. Bolden*, 270 Ga. App. 712, 715-716 (3) (608 SE2d 22) (2004).

private practices," as well as repayment of these revenues to the LLC. The following day, Dreger wrote Dr. Graivier in his capacity as corporate counsel for the LLC, asserting that Dr. Graivier had improperly diverted to NAPRS revenues that belonged to the LLC. Like Dr. Duncan, Dreger requested that Dr. Graivier stop the billing practice and pay back all diverted revenues.

The dispute over fees escalated, and Dr. Duncan — individually and on behalf of the LLC — sued the appellants for, among other things, breach of contract, fraud, and conversion ("the Duncan lawsuit"). Thereafter, a second dispute arose when Duncan P.C. attempted to execute a buy-sell clause in the LLC operating agreement. Dr. Duncan offered to purchase NAPRS's interest in all LLC assets, including the lease agreement relating to the office space, for $500,000. Although NAPRS purported to accept the offer, it asserted that the lease was not an LLC asset and should not be included in the sale. Duncan P.C. refused to close the sale without the lease, and NAPRS sued Duncan P.C. for breach of the buy-sell clause ("the NAPRS lawsuit").

The trial court in the NAPRS lawsuit ultimately determined that the lease was an LLC asset, that Duncan P.C. had properly invoked the buy-sell clause, and that NAPRS had rejected Duncan P.C.'s offer. The court further found that, given this rejection, NAPRS was obligated under the buy-sell clause to purchase Duncan P.C.'s interest for $500,000. It thus ordered NAPRS to tender to Duncan P.C. $500,000 plus interest in exchange for Duncan P.C.'s ownership interest in the LLC.

According to the appellants, the judgment in the NAPRS lawsuit forced NAPRS into bankruptcy, a proceeding that was later dismissed when NAPRS purchased Duncan P.C.'s interest in the LLC for the specified amount. Meanwhile, the trial judge in the Duncan lawsuit determined that, given the rulings in the NAPRS action, the Duncan claims were subject to dismissal or summary judgment. It thus granted the appellants' combined motion to dismiss/motion for summary judgment.

The appellants subsequently filed the instant action against Dreger, asserting three causes of action arising from Dreger's alleged malpractice, breach of fiduciary duties, and conflicts of interest. Dreger and his firm moved for summary judgment, arguing, among other things, that (1) his conduct did not proximately cause the appellants any damage, and (2) he had no attorney-client relationship with Kathy Graivier. The trial court agreed and granted the motion.

1. *Alleged Malpractice in drafting the LLC agreement.*

(a) *Claims brought by Dr. Graivier and NAPRS.* To support a claim for legal malpractice, a client must show that (1) he or she

employed the attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) such negligence proximately caused the client damages.[2] Without dispute, Dreger represented Dr. Graivier and NAPRS with respect to preparation of the LLC operating agreement. Dreger and his firm argued on summary judgment, however, that he acted with ordinary care and that his actions did not proximately cause any damage.

(i) *Ordinary care.* We agree with the appellants that a question of fact remains as to ordinary care. The appellants claim that Dreger negligently prepared the LLC operating agreement in a manner that did not properly specify the division of profits generated by the surgical center. Dr. Graivier testified that he and Dr. Duncan only intended to share profits generated by third-party users of the facility. Arguably, however, the language in the LLC operating agreement did not make this intention clear, and a dispute arose after Dr. Duncan claimed entitlement to profits resulting from surgical procedures performed by Dr. Graivier. Furthermore, the appellants presented the affidavit of a legal expert, who testified that Dreger's effort in drafting the LLC agreement fell below the standard of care.

We recognize that Dr. Graivier reviewed the operating agreement and could have questioned the provisions relating to profit distribution before he signed the agreement on behalf of NAPRS. In Georgia, however, "[i]t is the lawyer's responsibility to his client to select and employ words in the construction of [a contract] that will accurately convey the meaning intended."[3] And "[a]lthough he is not an insurer of the documents he drafts, the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, he then fails . . . to effectuate the intent of the parties."[4] Given the length of the operating agreement and the range of rather technical subjects that it covered, we cannot conclude that Dr. Graivier's failure to detect any error or lack of clarity in Dreger's draftmanship insulates Dreger from liability as a matter of law.[5]

(ii) *Proximate cause.* With respect to proximate cause, a malpractice claimant must show that the attorney's negligence harmed the

---

[2] See *Huntington v. Fishman*, 212 Ga. App. 27, 29 (441 SE2d 444) (1994).

[3] (Punctuation omitted.) *Kushner v. McLarty*, 165 Ga. App. 400, 401 (1) (300 SE2d 531) (1983).

[4] (Punctuation omitted.) Id.

[5] See id. at 402-403 (noting that an attorney is not insulated from liability for faulty draftmanship simply because the client reads the document). Compare *Berman v. Rubin*, 138 Ga. App. 849, 855 (227 SE2d 802) (1976) ("[W]hen [a] document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.").

claimant.[6] More specifically, the claimant must "demonstrate that but for the attorney's error, the outcome would have been different."[7] In this case, the appellants argue that Dreger's negligence caused them to incur: (1) attorney fees defending against the Duncan lawsuit; (2) the adverse judgment entered against them in the NAPRS lawsuit, which required them to purchase Duncan P.C.'s interest in the LLC for $500,000 plus interest; (3) attorney fees during the NAPRS bankruptcy proceeding; (4) attorney fees relating to the instant litigation; and (5) expenses and missed business opportunities associated with moving the NAPRS practice following the bankruptcy proceeding and NAPRS's loss of regulatory approval for a period of time.

We agree with the trial court that the appellants cannot show proximate cause as to much of this alleged damage. For example, the record shows that NAPRS was forced to purchase Duncan P.C.'s interest in the LLC after it refused to accept Dr. Duncan's buy-out offer. The appellants do not contend that this refusal related to the manner in which Dreger drafted the LLC. And Dr. Graivier admitted that Dreger had nothing to do with the drafting, preparation, or execution of the office lease. Rather, after consulting other counsel, Dr. Graivier and NAPRS elected to dispute Duncan P.C.'s claim that the lease constituted an LLC asset, giving rise to the NAPRS lawsuit.

Under these circumstances, no jury could reasonably conclude that, but for Dreger's conduct, the appellants would not have incurred expenses in litigating the NAPRS lawsuit or become liable for the judgment entered in that case.[8] Any causal relationship between Dreger's preparation of the LLC agreement and the lease dispute is simply too attenuated.[9] Similarly, we fail to see how damages flowing from the bankruptcy proceeding — which the appellants filed in response to the judgment entered in the NAPRS lawsuit — or the loss of NAPRS's regulatory approval can be attributed to Dreger's alleged negligence in drafting the LLC agreement.[10]

With respect to damages resulting from the Duncan lawsuit, however, a question of fact remains as to proximate cause. The Duncan lawsuit involved a dispute over the profit-sharing language in the LLC agreement Dreger drafted. The appellants offered evidence that such language did not reflect the intent of the parties. And although no judgment ultimately was entered against appellants in

---

[6] See *Studio X, Inc. v. Weener, Mason & Nathan*, 276 Ga. App. 652, 654 (624 SE2d 157) (2005).

[7] Id.

[8] See id.; *White v. Rolley*, 225 Ga. App. 467, 469-470 (2) (484 SE2d 83) (1997).

[9] See id.

[10] See id.

this lawsuit, they were forced to defend against it, incurring fees and expenses. A jury must decide whether such damages proximately resulted from Dreger's alleged negligence in drafting the agreement.[11] Accordingly, the trial court erred in granting summary judgment to Dreger and his firm on Dr. Graivier and NAPRS's claim that Dreger negligently prepared the LLC agreement.[12]

(b) *Claims brought by Kathy Graivier.* We agree with the trial court, however, that Kathy Graivier cannot maintain a malpractice action against Dreger or his firm. In resolving this issue, the trial court determined that Dreger and Mrs. Graivier did not have an attorney-client relationship, undermining her malpractice claims.[13] We find no error.

Kathy Graivier testified that she first met Dreger at the meeting during which her husband and Dr. Duncan signed the LLC agreement. After that meeting, she saw Dreger twice at depositions taken for the various lawsuits between the parties. Mrs. Graivier never hired Dreger to represent her personally or told Dreger that she thought he was representing her individually. And she candidly admitted that she does not allege he represented her individually.

Despite this testimony, Mrs. Graivier now asserts that she had a reasonable belief that Dreger represented her. To support her claim, she relies heavily on our decision in *Rogers v. Hurt, Richardson, Garner, Todd & Cadenhead,*[14] which held that "[e]ven where no express attorney-client relationship exists, an attorney may be liable for negligence under the theory of voluntary agent when the attorney gratuitously undertakes to perform a legal service (or . . . give legal advice) to another with the other's approval." Such liability, however, only extends

> to third parties who rely upon the professional's advice in the situations where the professional was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable

---

[11] See *Atlanta Woman's Club v. Washburne,* 215 Ga. App. 201, 202 (450 SE2d 239) (1994) (" '[A]ttorney fees and expenses of litigation in an *underlying* action are recoverable as real damages incurred as the result of defendants' malfeasance or misfeasance.' ") (emphasis in original); *Rogers v. Hurt, Richardson, Garner, Todd & Cadenhead,* 203 Ga. App. 412, 416 (2) (417 SE2d 29) (1992). We note, however, that damages flowing from Dreger's alleged breach do not include expenses and attorney fees incurred by the appellants in prosecuting *this* action. See *Atlanta Woman's Club,* supra.

[12] See *Rogers,* supra.

[13] See *Mays v. Askin,* 262 Ga. App. 417, 419 (1) (585 SE2d 735) (2003) ("The existence of an attorney-client relationship is the threshold question in a legal malpractice [action].").

[14] Supra at 415 (2).

person or limited class of persons for whom the information was intended, either directly or indirectly.[15]

Nothing in the record brings Kathy Graivier within this theory of liability. When asked about the meeting she attended with Dreger, Mrs. Graivier testified that she could not recall anything that was discussed. Dreger asserted in an affidavit that Mrs. Graivier, who was the corporate secretary of NAPRS, "actively participated" in a discussion about the LLC agreement. But the affidavit does not detail what Dreger said to Mrs. Graivier, indicate that she individually relied on his advice, or demonstrate that Dreger was aware of such reliance.

Citing *Rogers*, Mrs. Graivier asserts that any time an attorney represents a corporation, he or she owes a duty to the officers in their individual capacities, as well. In *Rogers*, however, individual corporate officers/shareholders alleged that an attorney provided negligent advice regarding a transfer of assets from the corporation to the officers/shareholders. We found that even if the attorney had an attorney-client relationship only with the corporation, "it is reasonable and foreseeable that the advice to transfer assets from the corporation to [the officers/shareholders] . . . would be relied upon by the [officers/shareholders], not only in their capacity as stockholders and officers in the corporation but also as individuals."[16]

No similar facts appear in this case. Dreger's representation did not involve Mrs. Graivier individually, and Mrs. Graivier has not cited any evidence that Dreger could reasonably foresee that his advice would be relied upon by her in her individual capacity. Moreover, we do not know what advice he allegedly gave her. Under these circumstances, the trial court properly found that no express or gratuitous attorney-client relationship arose between Dreger and Kathy Graivier.

2. *Breach of fiduciary duty/conflict of interest.* The appellants also argue that Dreger breached fiduciary duties he owed to them and/or engaged in conduct involving a conflict of interest. Specifically, they claim that Dreger sided with Dr. Duncan in the underlying NAPRS and Duncan lawsuits, despite his prior representation of the appellants. They further argue that Dreger undertook such representation without fully informing the appellants of his existing personal and professional relationship with Dr. Duncan.

According to the appellants, these alleged conflicts of interest give rise to claims of legal malpractice and breach of fiduciary duty.

---

[15] (Punctuation and emphasis omitted.) Id. at 416.
[16] Id. at 415-416.

As with a malpractice claim, however, a fiduciary duty allegation fails unless the claimant can show that the offending conduct proximately caused injury.[17] Even assuming some conflict of interest or breach of duty arose here, we agree with the trial court that the appellants cannot show damage.

The record demonstrates that Dr. Graivier understood before he hired Dreger that Dr. Duncan knew the attorney through the Rotary Club. On appeal, the appellants argue that Dr. Graivier did not know the extent of this relationship or realize that Dreger had previously performed legal work for Dr. Duncan. But at his deposition, Dr. Graivier admitted that even if he had known about Dreger's prior representation of Duncan, he probably would not have done anything differently with respect to the LLC agreement. And the appellants have pointed to no evidence that Dreger's relationship with Dr. Duncan impacted his preparation of that agreement.

Moreover, regardless of whether Dreger "sid[ed] against" his former clients in the various underlying lawsuits, nothing in the record indicates that such conduct harmed the appellants. The appellants complain that Dreger advised Dr. Duncan with respect to the parties' dispute over the LLC profit sharing provision, wrote a threatening letter to Dr. Graivier about that dispute, and testified adversely to the appellants in the resulting Duncan litigation. But Dreger did not represent Duncan or his professional corporation during the litigation. And the record does not support the conclusion that Dreger's initial letter to Dr. Graivier or his testimony in the Duncan action harmed the appellants.

As noted above, the Duncan litigation did not result in a judgment against the appellants; it ultimately was dismissed. The appellants now claim that Dreger's actions "fuel[ed] the fire of dispute" between Dr. Graivier and Dr. Duncan, causing the appellants to incur increased legal fees and other expenses. The appellants have pointed to no evidence, however, demonstrating that the end result would have been different — or that the various lawsuits would not have proceeded — had Dreger remained neutral.

Any conclusion that Dreger's alleged conflicts of interest and breaches of duty resulted in the claimed damages would be mere speculation, which cannot support a cause of action.[18] Accordingly, the trial court properly granted Dreger and his law firm summary judgment on these claims.

---

[17] See *Willett v. Russell M. Stookey, P.C.*, 256 Ga. App. 403, 411-412 (7) (568 SE2d 520) (2002).

[18] See *Szurovy v. Olderman*, 243 Ga. App. 449, 452-453 (530 SE2d 783) (2000).

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 22, 2006.

*Frank J. Beltran, Douglas V. Chandler,* for appellants.
*Carlock, Copeland, Semler & Stair, Johannes S. Kingma, Shannon M. Sprinkle,* for appellees.