A07A0597, A07A0598. BONNER ROOFING & SHEET METAL COMPANY, INC. et al. v. KARSMAN et al.; and vice versa.
(646 SE2d 763)

JOHNSON, Presiding Judge.

During 1998, Luree Bonner and Thomas Brunson were constructing a condominium development known as Thunderbolt Harbor through an entity known as Brunson & Bonner, LLC. During construction, Brunson and Bonner contracted with Bonner Roofing & Sheet Metal, Inc.,[1] to install roofs on the project for a reduced price of $175,000.[2] During 1999 and 2000, Fred Bonner had a disagreement with Brunson regarding the project. Negotiations were undertaken wherein one of the parties would buy out the other's interest. During the summer of 2000, Bonner Roofing, Luree Bonner and Fred Bonner (the "Bonners") hired attorney Stanley Karsman to negotiate the buy-out settlement. To consummate the settlement, Karsman drafted an indemnity agreement dated August 25, 2000.

Meanwhile, Bonner Roofing agreed to continue its part of the project for the agreed upon price. After the buy-out, Brunson changed the name of Brunson & Bonner, LLC to T.I. Brunson, LLC. After completion of the work, Bonner Roofing sent an invoice to T.I. Brunson in the amount of $338,401.60. T.I. Brunson paid $50,000 to Bonner Roofing, but refused to make any other payments. Bonner Roofing then asked Karsman to file a lien against the project for the outstanding amount of $288,401.60.

In 2001, Bonner Roofing and the Bonners filed an action against T.I. Brunson, LLC and Brunson individually alleging that Brunson was individually liable for the outstanding debt under the indemnity agreement and under the theory of piercing the LLC veil. The trial

---

[1] Bonner Roofing was owned and operated by Fred Bonner, Luree Bonner's husband.

[2] Bonner Roofing also agreed to perform other services for the project which were reflected on Bonner's final invoice to Brunson.

court granted summary judgment in favor of T.I. Brunson, LLC and Brunson individually, and we affirmed this decision in *Bonner v. Brunson.*[3]

In a second suit, the Bonners filed the present legal malpractice action against Karsman and his law firm ("Karsman"), contending Karsman failed to adequately draft the indemnity agreement so as to hold Brunson individually liable and failed to file a valid lien. With respect to the lien, the Bonners specifically allege Karsman inadequately drafted the legal description of the property against which the lien was filed, thereby rendering the lien invalid. Karsman filed a motion for summary judgment. The trial court granted the motion with respect to the lien issue, but denied the motion with respect to the indemnity agreement issue. In Case No. A07A0597, the Bonners appeal the trial court's order. In Case No. A07A0598, Karsman appeals the trial court's order. For purposes of appeal, these cases have been consolidated.

## Case No. A07A0597

1. The Bonners contend the trial court erred in granting partial summary judgment to Karsman on the issue of whether Karsman's filing of an allegedly defective lien proximately caused harm to the Bonners. The Bonners assert that Karsman drafted an inadequate property description, thereby rendering the lien invalid. However, Karsman asserts that the description in the lien was not the proximate cause of the Bonners' injuries. We agree with Karsman.

Regardless of whether the property description in the lien was inadequate, it is clear from the record that the Bonners were barred from foreclosing on the lien because they failed to give notice to the court clerk within 14 days of filing their suit pursuant to OCGA § 44-14-361.1 (a) (3). OCGA § 44-14-361.1 (a) sets forth requirements to make valid liens. The statute specifically provides that "on failure of any of [the provisions] the lien shall not be effective or enforceable."[4] Provision (3) of this Code section requires that the party claiming the lien "shall file a notice with the clerk of the superior court of the county wherein the subject lien was filed" within 14 days after filing an action to recover the amount of the party's claim. Failure to comply with this notice requirement renders the lien unenforceable.[5]

It is undisputed that the Bonners failed to comply with this notice requirement, and that the foreclosure suit was filed, not by

---

[3] 262 Ga. App. 521 (585 SE2d 917) (2003).

[4] OCGA § 44-14-361.1 (a).

[5] See *D & T Glass, Inc. v. Barrow Enterprises*, 172 Ga. App. 797 (325 SE2d 170) (1984).

Karsman, but by other counsel. As such, the question of the adequacy of the legal description of the lien Karsman drafted was irrelevant due to the Bonners' procedural error. The substance of the lien, and any possible defects in the lien itself, were never presented to the trial court because the lien was rendered unenforceable due to the procedural defect.

Moreover, the Bonners' only evidence in support of their assertion that the property description was in error consists of an expert affidavit which accompanied the complaint. In this affidavit, the expert states his conclusion that the description was inadequate merely because it was inadequate: "The aforesaid purported legal description was inadequate in that it failed to contain an adequate legal description of the property against which the lien was filed, which would have been necessary in order to make the lien valid." No fact or law is cited in support of the statement.

Karsman, on the other hand, has offered a statement by the attorney who represented Brunson in opposing the lien in the underlying suit. In this statement, the attorney testifies that the property description was never at issue in the underlying case. Rather, the "primary basis for [his] demand for cancellation was the failure to record the notice of suit required by OCGA Section 44-14-361.1. . . . [He had] no doubt whatever that, under applicable law, the lack of a notice of suit was totally and irrevocably fatal to the lien claim." The Bonners have failed to come forward with sufficient evidence to rebut this statement regarding the proximate cause of their harm. The trial court did not err in granting Karsman's motion for summary judgment on this issue.

### Case No. A07A0598

2. Karsman contends the trial court erred in finding an issue of fact exists as to whether Karsman was to have secured the individual liability of Brunson to Bonner Roofing in the underlying case. We agree.

The Bonners contend in their appellate brief that Karsman was charged with securing the individual liability of Brunson and he failed to do so. However, they have failed to come forward with any evidence to support this contention. Summary judgment is appropriate whenever a party can demonstrate there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law:

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged

by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[6]

The record in the present case shows that the Bonners failed to come forward with evidence that Karsman was instructed to draft the indemnity agreement to include personal liability by Brunson.

During the course of the litigation, Luree Bonner, Fred Bonner, Sr., and Fred Bonner, Jr., the present principal of Bonner Roofing, were all specifically asked about the personal guaranty provision they alleged Karsman failed to include in the indemnity agreement. None of the Bonners testified or indicated in any way that they asked or intended Karsman to draft the indemnity agreement in such a way so as to hold Brunson personally responsible. Fred Bonner, Jr. testified that he did not have any knowledge about a contention that Brunson should have personally indemnified or personally been responsible for any payment to Bonner Roofing. When asked what Karsman said that led Fred Bonner, Sr. to believe that Brunson personally guaranteed the payment, Fred Bonner, Sr. testified, "I don't know that he personally assured me of that." While both Luree Bonner and Fred Bonner, Sr. indicated that they believed Brunson had personally guaranteed the payment from what they read in the indemnity agreement, neither individual made any statement indicating that they had requested Karsman to include such language, and Fred Bonner, Sr. indicated he "never went over it."

The issue at hand is whether Karsman was to have insured the personal liability of Brunson, and Karsman has denied he was charged with making Brunson personally liable for the debt of T.I. Brunson, LLC. The Bonners have failed to raise a question of material fact as to what Karsman was to have done in his representation of them. At most, their testimony shows that the Bonners assumed Brunson would be personally liable under the indemnity agreement. However, the record is devoid of any evidence showing that the Bonners instructed Karsman to make Brunson personally liable.

In Georgia, . . . it is the lawyer's responsibility to his client to select and employ words in the construction of a contract that will accurately convey the meaning intended. And although he is not an insurer of the documents he drafts, the

---

[6] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); OCGA § 9-11-56 (e).

attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, he then fails to effectuate the intent of the parties.[7]

Here, there is no evidence that the Bonners ever instructed, ordered or otherwise directed Karsman to draft the indemnity agreement in such a way so as to hold Brunson personally liable for the debt. Thus, there is no evidence that the indemnity agreement drafted by Karsman failed to effectuate the intent of the parties. The trial court erred in denying Karsman's motion for summary judgment on this ground.

*Judgment affirmed in Case No. A07A0597. Judgment reversed in Case No. A07A0598. Phipps and Mikell, JJ., concur.*

DECIDED MAY 29, 2007.

*Jones, Jensen & Harris, Taylor W. Jones*, for appellants.
*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., James D. Johnson*, for appellees.

---

[7] (Punctuation and footnote omitted.) *Graivier v. Dreger & McClelland*, 280 Ga. App. 74, 77 (1) (a) (i) (633 SE2d 406) (2006).