A11A1061, A11A1062. DUNCAN v. KLEIN et al.; and vice versa.

(720 SE2d 341)

BLACKWELL, Judge.

These appeals arise from a legal malpractice case in which Jeffrey W. Duncan claims that lawyer Daniel M. Klein gave him erroneous advice about whether he could sue his employer for violations of federal employment discrimination laws. Klein allegedly told Duncan that such a lawsuit would not succeed, and believing as a result that he had no recourse against his employer, Duncan later resigned his employment. Duncan then enrolled in law school, where he learned that Klein might have given him bad advice, and he filed a lawsuit against his former employer, which he later settled. Notwithstanding that he eventually sued his former employer, and notwithstanding that he evidently got something out of that lawsuit, Duncan recovered less from his former employer, he says, than he would have recovered if Klein had advised him correctly and he had sued his employer more quickly. Moreover, Duncan contends that his decision to resign his employment was based on the advice he received from Klein, and as a result of his resignation, he had to enroll in law school, which caused him to incur substantial costs and to suffer an extended separation from his family. In the case below, Duncan sought to recover damages from Klein and his law firm, Greene, Buckley, Jones & McQueen, for the value of the claims that Duncan was unable to successfully assert against his former employer and for damages arising out of his enrollment in law school, as well as punitive damages and attorney fees.

Klein and the firm moved for summary judgment, and the court below granted that motion in part. The court determined that Duncan could not recover damages arising out of his enrollment in law school, that he could not recover damages for the value of a constructive discharge claim against his former employer, and that he could not recover punitive damages or attorney fees, and the court awarded summary judgment to Klein and the firm to the extent that

Duncan sought such damages. The court ruled, however, that Duncan might properly recover damages for the value of any claims against his former employer for back pay that were viable when he consulted with Klein but were barred by the time he eventually sued his former employer. Duncan appeals in Case No. A11A1061 from the award of partial summary judgment, and Klein and the law firm appeal in Case No. A11A1062 from the denial in part of their motion for summary judgment. For the reasons set out below, we see no error and affirm in both appeals.

The standard for summary judgment is settled and familiar. "[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). See also OCGA § 9-11-56 (c).

> When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial[,] the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element.

*Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011) (citation omitted). On appeal from the grant or denial of a motion for summary judgment, we view the evidence of record in the light most favorable to the party opposing the motion, and we review the decision to grant or deny the motion de novo. *Cowart*, 287 Ga. at 624 (1) (a).

So viewed, the evidence in this case shows that Duncan, an American citizen, went to work for NGK-Locke, Inc., a subsidiary of a Japanese company, in 1991. By 2001, Duncan had become convinced that NGK treated its Japanese employees better than its American employees. Other American employees of NGK complained about discrimination, and in February 2001, NGK engaged a lawyer to investigate these complaints. In the course of his investigation, the lawyer spoke with Duncan and informed him that a treaty between the United States and Japan permits NGK to discriminate in favor of its Japanese employees, notwithstanding the federal employment discrimination laws.

Sometime in February or March 2001, Duncan asked Klein for advice about NGK and the extent to which he might successfully assert a discrimination claim against it. Duncan told Klein that NGK

"claimed a legal right to discriminate," and he asked if NGK was correct. Duncan also asked Klein whether he had a viable claim against NGK for discrimination based on national origin, and if so, how he should proceed to assert such a claim. Klein initially advised Duncan that Title VII of the Civil Rights Act of 1964 applied to NGK and that Duncan could file a claim against NGK under the Act. Duncan later discovered, however, a decision of the United States Court of Appeals for the Fifth Circuit concerning the treaty between the United States and Japan, and he asked Klein to review this decision and reconsider his advice. Klein did so, and according to Duncan, Klein advised him in April 2001 that NGK indeed was permitted to discriminate in favor of its Japanese employees and that any claim against NGK would be "completely barred."

Duncan became more and more dissatisfied with the circumstances of his employment in the following months. NGK was "moving business from [him]," he says, and Duncan concluded that, sooner or later, he would lose his job. Accordingly, Duncan began to consider other options, and he applied to several law schools. He was admitted in July 2001 to the New England School of Law, and he resigned his employment with NGK as of August 2001 and set off for law school. Duncan since has explained that he left his job to attend law school only because he had no recourse, he thought, against NGK for its discriminatory practices. Duncan testified at his deposition that, "if Mr. Klein had given [him] correct legal advice, [he] would not have resigned [his] position . . . . [He instead] would have filed [a discrimination] claim, and [his employment] would have been protected by federal law."

While attending law school, Duncan apparently learned that he might have a viable claim against NGK after all. In February 2002, Duncan filed a discrimination claim against NGK with the Equal Employment Opportunity Commission (EEOC), asserting, among other things, that NGK had denied him promotions based on his national origin and race and that he was constructively discharged by NGK. In September 2002, the EEOC issued a right-to-sue letter, and about three months later, Duncan filed a lawsuit against NGK in a federal district court in Maryland. In that lawsuit, Duncan claimed that NGK had unlawfully discriminated against him on the basis of race and national origin, and he sought damages for, among other things, its failure to promote him, unequal pay, a hostile work environment, retaliation, and constructive discharge. Duncan settled with NGK for a sum of money and dismissed his lawsuit in June 2004.

Duncan sued Klein and the law firm in 2005, asserting claims for

legal malpractice, breach of contract, and breach of fiduciary duty.[1] Klein and the firm moved for summary judgment, which the court below granted in part. The court determined that Duncan could not properly recover emotional damages, punitive damages, or the expenses of litigation, and it awarded summary judgment to Klein and the firm on these claims. The court also determined that Duncan could not recover for claims he filed, or could have filed, against NGK after he learned of Klein's and the firm's purported error, but that Klein and the firm might be liable to Duncan to the extent that the advice Klein had given was a proximate cause of Duncan waiting to assert otherwise meritorious claims against NGK until after the period of limitations ran on those claims.

All the parties asked the court to clarify its ruling on the motion for summary judgment, and in response to these requests, the court explained that it had awarded summary judgment to Klein and the firm with respect to any claims that were, or could have been, asserted by Duncan in his lawsuit against NGK, including a claim for constructive discharge. According to the court, "[t]his [also] includes claims which were not time barred, but which [Duncan] chose not to raise in that action, such as claims for damages arising out of [Duncan's] entrance into law school and attendant costs, the refinancing of his home, and other consequential damages." The court then entered final judgment for Klein and the firm on the claims for damages that, the court had concluded, Duncan could not properly pursue. The court also offered some additional clarification of its earlier order, explaining that only "the claims which were time-barred in the lawsuit against NGK" remained pending in the action.

## Case No. A11A1061

1. Duncan contends first that the court below erred when it concluded that he could not recover damages from Klein and the firm for his inability to successfully assert a constructive discharge claim against NGK. Duncan explains that a Maryland court would not recognize a claim for constructive discharge but that he would have been able to successfully pursue a constructive discharge claim in Georgia if only Klein had given him good advice. We think, however, that Duncan misunderstands the law that applied in his Maryland lawsuit, and we conclude that a Maryland court would not necessarily have rejected a claim for constructive discharge under the federal employment discrimination laws.

---

[1] Duncan originally sued Klein and the firm in 2003, but he later dismissed that lawsuit without prejudice and filed the lawsuit below in 2005 as a renewal action.

To succeed on his claim for legal malpractice,[2] Duncan must show that he employed Klein as his lawyer, that Klein failed "to exercise ordinary care, skill, and diligence," and that Klein's failure to do so proximately caused Duncan to sustain some injury. *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007). And to prove proximate causation, Duncan must show that, but for the error of his lawyer, "the outcome would have been different." Id. at 45. With respect to constructive discharge, Duncan contends that he would have sued NGK in a Georgia court if Klein had given good advice, but because Klein did not, Duncan had to sue NGK in Maryland,[3] where a claim for constructive discharge, he says, is not viable. Put another way, Duncan contends that the erroneous advice he received from Klein caused him to lose an otherwise viable claim against NGK for constructive discharge. See *Huntington v. Fishman*, 212 Ga. App. 27, 30 (441 SE2d 444) (1994).

In support of his contention that he could not successfully pursue a constructive discharge claim in Maryland, Duncan points to *Reece v. Martin Marietta Technologies, Inc.*, 1995 U. S. Dist. LEXIS 3711 (D. Md. 1995), a case in which the federal district court dismissed a claim for the tort of constructive discharge under *Maryland law*. But the rejection of a claim for constructive discharge under state law does not mean that a court necessarily would reject a claim for constructive discharge under federal law,[4] and indeed, the Fourth Circuit, of which Maryland is a part, recognizes such claims under Title VII. See *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F3d 1126, 1132-1134 (II) (C) (4th Cir. 1995) (reversing summary judgment in favor of employer on Title VII constructive discharge claim); see also *Pennsylvania State Police v. Suders*, 542 U. S. 129, 143 (II) (A) (124 SC 2342, 159 LE2d 204) (2004) (agreeing "with the lower courts and the EEOC that Title VII encompasses employer liability

---

[2] Duncan asserts separate claims for legal malpractice, breach of contract, and breach of fiduciary duty, but all these claims are based on the alleged failure of Klein to properly research and advise Duncan about the treaty between the United States and Japan and its implications for his claims against NGK. The court below characterized these claims as claims of legal malpractice, and the parties do not attempt on appeal to differentiate the claims. See, e.g., *McMann v. Mockler*, 233 Ga. App. 279, 282 (3) (503 SE2d 894) (1998) (trial court correctly concluded that plaintiff's claims for breach of fiduciary duty, breach of contract, and breach of implied duty of good faith and fair dealing merely duplicated her malpractice claim). For this reason, we will also treat all the claims as claims of legal malpractice.

[3] Duncan does not clearly explain why he could not bring his lawsuit in Georgia at the time he filed it. As best we understand it, Duncan contends that his lawsuit, or at least his constructive discharge claim, had become time-barred in Georgia by the time he filed his lawsuit. Because we conclude that a Maryland court would recognize a constructive discharge claim under federal law, we need not attempt to fully understand why Duncan could not sue in Georgia.

[4] Moreover, if *Reece* is right, Duncan could not have maintained a constructive discharge claim under *Maryland law* in a Georgia court either, so he lost nothing by filing in Maryland.

for a constructive discharge"). The record shows that Duncan sued NGK under Title VII,[5] that he alleged in his lawsuit against NGK that he had been constructively discharged, that a Maryland court likely would have recognized such a claim under federal law, and that Duncan settled his lawsuit against NGK for a sum of money, precluding any dispositive adjudication of the constructive discharge claim by the Maryland court. Under these circumstances, Duncan cannot show that, but for the allegedly erroneous advice that Klein gave him, the outcome of his claim for constructive discharge would have been any different. "In a case where a plaintiff's pending claims remain viable despite the attorney's alleged negligence, the plaintiff severs proximate causation by settling the case, an act which makes it impossible for his lawsuit to terminate in his favor." *Duke Galish, LLC v. Arnall Golden Gregory, LLP*, 288 Ga. App. 75, 76, n. 3 (653 SE2d 791) (2007). See also *Huntington*, 212 Ga. App. at 38, n. 2 (viability of a claim "refers only to the question of whether further litigation of that claim may lead to a favorable result as of the time prior counsel was dismissed from the case"). Accordingly, we find no error in the award of summary judgment on the claim concerning constructive discharge.

2. Duncan also contends that the trial court erred when it awarded summary judgment to Klein and the firm on his claims for punitive damages and attorney fees. We will address both claims in turn.

(a) Punitive damages may be recovered in cases in which it is established by clear and convincing evidence that "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). Duncan points to the opinions of his expert witnesses about the shortcomings of the research that Klein undertook and the advice he gave, and Duncan argues that a jury could properly find that these shortcomings show "that entire want of care which would raise the presumption of conscious indifference to consequences" that would warrant punitive damages. We disagree.

Although Duncan points to evidence that Klein may have breached the standard of care, that evidence does not show anything more than, at worst, gross negligence. But as we have said before, "[n]egligence, even gross negligence, is inadequate to support a punitive damage award. . . . Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." *Brooks v. Gray*, 262 Ga.

---

[5] He also sought damages under Maryland law for defamation.

App. 232, 232 (1) (585 SE2d 188) (2003) (citations and punctuation omitted). We find no evidence in the record from which a jury might properly conclude that an award of punitive damages in this case is warranted. See *Houston v. Surrett*, 222 Ga. App. 207, 208-209 (1) (474 SE2d 39) (1996) (where attorney's conduct could not be anything more than gross negligence, there was no jury question on issue of punitive damages in client's malpractice action). The court below, therefore, did not err when it awarded summary judgment to Klein and the firm on punitive damages.

(b) "Attorney fees are recoverable under OCGA § 13-6-11 when a party has acted in bad faith, has been stubbornly litigious, or has subjected the other party to unnecessary trouble and expense." *Bourke v. Webb*, 277 Ga. App. 749, 752 (2) (627 SE2d 454) (2006). Questions of bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the jury. See *Jones v. Ceniza*, 257 Ga. App. 806, 810 (5) (572 SE2d 362) (2002) (footnote omitted). Duncan, however, points to no evidence that would support an award of attorney fees. Instead, he refers us generally to the "acts and/or omissions made by [Klein and the firm] in their representation of [Duncan]," which are, he says, identified in his pleadings below and, more specifically, in the affidavits of his legal experts. While these pleadings and affidavits may well show negligence, "mere negligence will not support an award of attorney fees based on bad faith." *MARTA v. Mitchell*, 289 Ga. App. 1, 4 (659 SE2d 605) (2007) (punctuation and footnote omitted). And as to stubborn litigiousness and unnecessary trouble and expense, Duncan does not point us to any evidence that would support an award of attorney fees on those grounds, and we will not search the extensive record to ascertain if any such evidence exists. See *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999) ("It is not the function of appellate judges to engage in the insipid search for support of alleged error without citation to relevant parts of the record.") (citation and punctuation omitted). We find no error in the award of summary judgment on attorney fees.

3. Last, Duncan argues that the trial court erred when it awarded summary judgment on his claims for damages that arise from his decision to attend law school, including the costs of law school, the costs of refinancing his house, and the emotional distress he endured while he was separated from his family while attending law school. The court below concluded that Duncan could have pursued such damages in his lawsuit against NGK, and for this reason, he could not recover them from Klein and the firm. On an appeal from the award of summary judgment, however, we are not confined to the reason given by the trial court for its decision, and we can affirm the decision below if it is right for any reason. See *La*

*Quinta Inns, Inc. v. Leech*, 289 Ga. App. 812, 819 (2) (658 SE2d 637) (2008) (grant of summary judgment will be affirmed if right for any reason). Whether or not Duncan might have recovered these damages from NGK, Klein and the firm argued below, as they do on appeal, that their malpractice, if any, was not the proximate cause of damages that Duncan allegedly sustained by virtue of attending law school. We agree with Klein and the firm.

Negligence is the proximate cause of an injury only when the injury is "the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act." *Beasley v. A Better Gas Co., Inc.*, 269 Ga. App. 426, 428 (1) (604 SE2d 202) (2004). "The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended." Id. The limitations of proximate cause reflect

> a policy decision that, for various reasons including the intervening act of a third person, the defendant's conduct is too remote from the injury to attach liability. While this policy decision is usually left to a jury, in plain and undisputed cases the court may make the determination as a matter of law.

*White v. Rolley*, 225 Ga. App. 467, 470 (2) (484 SE2d 83) (1997) (citation and punctuation omitted). This is such a plain and indisputable case.

The record shows that, after Duncan allegedly received bad advice from Klein, he made a decision to resign from NGK and go to law school. After he was admitted to the New England School of Law, Duncan refinanced his house, borrowing $100,000 on his house to pay bills and take care of his family while he attended law school, and he borrowed an additional $160,000 to pay the costs of law school. Regarding his alleged emotional damages, Duncan explains that he had to leave his family in Georgia to attend law school in Massachusetts, and he notes the difficulties that the separation caused his marriage and the pain of separation from his daughter.

It could be argued that, but for the alleged malpractice, Duncan would not have resigned his job with NGK, decided to enroll in law school, incurred debts to support his family and pay for law school, or suffered a separation from his family while he pursued his studies in New England. Nevertheless, it is highly questionable whether attending law school is a legally cognizable injury, notwithstanding that the rigors of law school are well known and undoubtedly unpleasant to

some extent. But in any event, we can discern nothing in the record to suggest that Klein and the firm should have foreseen that, as a result of giving bad advice to Duncan about the merits of his claims against NGK, Duncan would elect to enroll in a law school in a faraway place, leave his family behind, and refinance his home to cover the costs of law school and the expenses of his family in the meantime.[6] The alleged malpractice might well be a cause of Duncan leaving his job with NGK, but it is not the proximate cause of his free choice to remake his life and enter into the practice of law.[7] The "intervening decisions by [Duncan] render [the alleged] negligence [of Klein and the firm] too remote to satisfy the proximate cause requirement for a legal malpractice claim." *White*, 225 Ga. App. at 470 (2).

For all these reasons, the award of partial summary judgment to Klein and the firm must be affirmed.

### *Case No. A11A1062*

4. In their cross-appeal, Klein and the firm contend that the court below erred when it denied their motion for summary judgment in part.[8] As we explained earlier, the court held that Klein and the firm might be liable for the advice that Klein gave to Duncan to the extent that this advice proximately caused Duncan to fail to bring an otherwise meritorious claim until after the period of limitations had run. The claims that survived summary judgment below are claims for back pay that, Duncan contends, he could have recovered from NGK if only he had filed his lawsuit against NGK sooner.[9] On appeal, Klein and the firm offer two reasons why, they say, the court should have awarded them summary judgment on these claims as well. We will address each in turn.

---

[6] In addition, emotional damages are not recoverable under the facts of this case. With an exception not applicable here, "[o]nly in cases where mere negligence is not relied upon, but the wrong complained of is wanton, voluntary, or intentional, may damages for mental pain and suffering be recovered without a showing of actual physical injury." *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 416 (2) (306 SE2d 340) (1983) (citation omitted). Cf. *Lee v. State Farm Mutual Ins. Co.*, 272 Ga. 583, 588 (III) (533 SE2d 82) (2000).

[7] If Duncan had decided instead to remake himself as a fisherman, would anyone seriously contend that Klein and the firm owe him a boat and a dock? If Duncan had decided to become a professional gambler, would anyone seriously contend that they owe him a six-figure stake at the Bellagio? We doubt it. That one loses his job because his lawyer makes a mistake does not mean that he is entitled to remake his life, however he sees fit, and at whatever cost, on the dime of the lawyer. The claim of such an entitlement is preposterous.

[8] Duncan has moved twice to dismiss the cross-appeal, and he also has moved to strike the brief of Klein and the firm on the cross-appeal and for an award of sanctions. We deny these motions.

[9] According to Duncan, the delay in filing caused him to lose the opportunity to recover between eight and ten months of back pay damages, given the two-year period for which back pay can be recovered under Title VII. See generally 42 USC § 2000e-5 (g) (1) ("Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with

(a) First, Klein and the firm contend that Duncan could have recovered the back pay from NGK that he now seeks as damages in this case, inasmuch as he actually asserted a claim in his lawsuit against NGK under 42 USC § 1981, and such a claim, they argue, permits a plaintiff to recover damages for back pay, subject to a four-year limitations period. Duncan responds, however, that Klein and the firm did not raise this argument below, and we agree. Because this legal issue was not properly raised below, we will not consider it for the first time on appeal. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court") (footnote omitted).

(b) Second, Klein and the firm assert that there is no evidence from which a jury might find that the advice that Klein gave to Duncan proximately caused him to delay bringing a claim against NGK. We disagree. Duncan testified that, if Klein had correctly advised him about his rights under the federal employment discrimination laws, he would have filed a claim with the EEOC then, while still employed with NGK. And when Duncan later learned that he might have a viable discrimination claim against NGK after all, he did, in fact, file a claim. There is, therefore, at least some evidence from which a jury could conclude that the alleged malpractice caused some delay in the assertion of claims against NGK, and for this reason, the court below did not err in denying in part the motion for summary judgment.

*Judgments affirmed. Barnes, P. J., concurs. Adams, J., concurs in judgment only.*

DECIDED NOVEMBER 29, 2011.

*Jeffrey W. Duncan*, pro se.
*Carlock, Copeland & Stair, Johannes S. Kingma, Michele R. Jones, Christopher C. Meeks*, for appellees.

---

the Commission."). For purposes of the cross-appeal, Klein and the firm assert that they are entitled to summary judgment on the claims for such damages, "[r]egardless of whether [Duncan's claims against NGK] fell outside the Title VII limitations period."