69744. ROGERS et al. v. NORVELL.
(330 SE2d 392)

BIRDSONG, Presiding Judge.

Mary and Jimmy Rogers were involved in an automobile accident in Florida on March 14, 1981. The driver of the other car, Leroy Batchelor, a resident of Florida, was driving in the wrong direction on a four-lane highway and struck the Rogers' car head-on. Mary Rogers sustained serious injuries while her husband, Jimmy, received only minor injuries. The Rogers are residents of Douglasville, Georgia, and retained Ray C. Norvell, Sr., of Decatur, Georgia, to represent them in a tort action against Batchelor. Norvell gave notice of his represen-

tation of the Rogers to Batchelor on March 23, 1981. Batchelor's son, William, sent the letter to his attorney and to his father's insurer, Government Employees Insurance Company (GEICO). Thereafter, on May 2, 1981, Leroy Batchelor died from injuries incurred in this incident and William Batchelor qualified as his executor on June 24, 1981. The fact of Batchelor's death was not known to Norvell, nor was such fact communicated to Norvell by GEICO until May 11, 1982. A Florida statute requires a person having a claim against a decedent to file the claim within three months of the first publication of the notice of administration of the estate. Such limitation includes a claim for damages founded on any wrongful act of the decedent. Fla. Stat. Ann. § 733.702.

R. C. Morrow, a claims representative of GEICO, wrote Norvell on July 14, 1981, that "our insured carries a $10,000/$20,000 BI policy limit" and tendered the $10,000 in settlement of the claim of Mary Rogers, but wanted a medical report on Jimmy Rogers' claim. Although this letter was dated more than 60 days after the death of Batchelor, it spoke of insurance in the present tense. Morrow also called the law office of Norvell in July, 1981, and spoke to a paralegal assistant and advised her he wanted to settle Mary Rogers' claim for $10,000. She advised him that Mrs. Rogers would not accept $10,000 and they would contact him later. Morrow advised her that "he would discuss the matter with his insured and get back with [them] on this matter." The paralegal assistant also told Morrow it would be necessary to determine the amount of the insured's assets before any settlement could be reached. Morrow called her back several days later and said that was all they were going to get, "that Mr. Batchelor didn't have anything."

However, the documents in the GEICO file on the Batchelor settlement showed that in April 1981, GEICO offered to pay William Batchelor $18,523.39 as the value of the car driven by Leroy Batchelor at the time of the wreck. It was a 1981 Lincoln Continental, Mark VI, and the incident occurred on March 14, 1981. Further, the GEICO file shows that on June 5, 1981, they were informed that they would be dealing with the insured's son as the administrator of the insured's estate, in settling the claim on the insured's car. The GEICO files also had a Proof of Loss, dated July 10, 1981, signed by William Batchelor as the Administrator of the Estate of Leroy Batchelor. In addition, there is a letter from Morrow to the GEICO claims examiner in Macon, dated July 21, 1981, which states that their insured died May 2, 1981. Hence, as early as April 1981, GEICO had offered to pay the insured's estate over $18,000 for the car, and at least as early as June 5, GEICO knew that their insured was deceased. It was also on an unknown date in July that Morrow called Norvell's office in an attempt to settle the claim against Mary Rogers and stated that he

would discuss the matter with his insured. Thus, as late as the latter part of July, Morrow was claiming ignorance of his insured's death, even though he died on May 2. The non-claim statute would not have run except in the third month following publication of the notice of administration. The file shows that William Batchelor was appointed June 24. The time to file a claim would have expired sometime in the latter part of September 1981. However, neither GEICO nor the administrator communicated the *fact of the tortfeasor's death* to Norvell until 1982.

A letter to Jimmy Rogers from Norvell advised him that he did not want to file an action while he was in prison because the defendant would depose him: "We might be rather embarrassed if you're still in prison. This is a problem I have been trying to avoid." Norvell stated he did not want the defendant to find out that Rogers was a felon. After finding out that the tortfeasor had died, Norvell filed suit in the U. S. District Court for Northern Georgia, which was dismissed. Norvell also filed suit in the DeKalb Superior Court against GEICO for fraud and deceit. While this action was pending, GEICO again tendered a settlement offer of $10,000 to Mary Rogers, and $6,750 to Jimmy Rogers, which required dismissal with prejudice of the suit against GEICO. Jimmy Rogers consulted another attorney and discharged Norvell. Thereafter, the Rogers' claims against the tortfeasor were settled by payment of $10,000 to Mary Rogers, and $7,250 to Jimmy Rogers. The settlement agreement required dismissal with prejudice of the action against GEICO and releases to GEICO and William Batchelor and the tortfeasor's estate. Mary and Jimmy Rogers then filed this malpractice action against Norvell on the grounds of failing to file an action within "the applicable statute of limitations."

Norvell argued that his acts were not the proximate cause of any potential loss to the Rogers, because the Rogers had a viable claim in the DeKalb Superior Court and the four-year statute of limitations in Florida for a personal injury claim had not expired. He cited Florida law which holds that the conduct of a claims representative of a decedent can operate as a waiver of the Florida non-claims statute. Thus, he contends the release executed by the Rogers under the advice of their new attorney was the proximate cause of the loss of any further claim against the tortfeasor's estate. The trial court agreed and found that the evidence before the court "fail[ed] to show that any act on the part of Ray Norvell, Sr. proximately caused the plaintiffs' loss." The court reasoned that the Florida statute did not apply to claims against liability insurance companies and Norvell's failure to present Rogers' claims to the administrator within three months could not have affected Jimmy Rogers' claim, as he settled with GEICO below the policy limit. With respect to Mary Rogers, the court found there

was a viable action pending against GEICO in the DeKalb Superior Court and there was a basis for asserting estoppel against GEICO and the administrator of the tortfeasor's estate which could bar the defense of the Florida non-claim statute, and the action was maintainable within the four-year Florida statute of limitations for personal injuries. Plaintiffs' motion for summary judgment was denied, and defendant's motion for summary judgment was granted. Plaintiffs bring this appeal. *Held*:

1. Plaintiffs' enumerate as error the consideration of the affidavit tendered by the defendant in support of his motion for summary judgment. Norvell submitted his personal affidavit as an expert in the law, in opposition to plaintiffs' motion for summary judgment and in support of his motion for summary judgment. He stated that he had personal knowledge of the facts, was a licensed attorney, a member of the State Bar of Georgia, and had practiced law continuously since June 1952. He was also a judge for the years 1973 through 1976. He qualified himself particularly in the field of personal injury cases. He denied that he failed to exercise the degree of care and skill or ability ordinarily exercised under the same or similar conditions or that he was negligent in any particular as set forth in the affidavit of the plaintiffs' expert witness. He stated what he had tried to accomplish and how he informed his clients of those plans. In his opinion, such strategy was commensurate with the degree of care and skill ordinarily exercised by reasonable prudent attorneys generally. He cited the fact that he had been misled by statements of the GEICO claims representative to himself and his paralegal assistant to believe that the tortfeasor was still in life. He denied knowledge of Batchelor's death until notified by Morrow's letter dated May 11, 1982. In his opinion, his actions met the standard of care ordinarily exercised by attorneys generally. He contested the statement of the plaintiffs' expert that the statute of limitations had run against a claim against the estate. He asserted that the statute is four years if the estate's representative is estopped from asserting the non-claim statute and there is still an issue of fact as to whether there was a waiver. He also is of the opinion that the proximate cause of the bar to further action against the tortfeasor's estate was the release executed by the plaintiffs and not his actions.

We should note that this enumeration addresses only the court's "considering the affidavit tendered by defendant" and not the sufficiency of the affidavit to support the defendant's position. In legal malpractice actions, it is permissible for a defendant, if qualified, to present an affidavit on his behalf as to the applicable standard of conduct and whether his actions met that standard. *Parker v. Knight*, 245 Ga. 782 (3) (267 SE2d 222); *Rose v. Rollins*, 167 Ga. App. 469, 471 (306 SE2d 724). The trial court properly considered the affidavit of

the defendant.

2. Plaintiffs' contend the trial court erred in denying their motion for summary judgment and in granting defendant's motion. We do not agree.

There is a presumption that the legal services of an attorney are performed in an ordinarily skillful manner and the burden is on the one receiving such services to show a lack of due care, skill and diligence, in a malpractice action. *Hughes v. Malone*, 146 Ga. App. 341, 346 (247 SE2d 107). Plaintiffs attached the affidavit of an attorney, showing his qualifications, who had "familiarized" himself with the facts of this case, who was of the opinion that defendant "did not exercise the degree of care, skill, or ability which is ordinarily exercised under similar conditions and like circumstances by an attorney." The trial court held that plaintiffs' expert's affidavit was insufficient to rebut the presumption that defendant exercised that degree of care and diligence ordinarily exercised by the profession generally.

We need not reach that issue as plaintiffs' alleged damage was the loss of the ability to sue the tortfeasor's estate because of the bar of the Florida "non-claim" statute. A legal malpractice action is sui generis insofar as plaintiffs' proof of damages is concerned (*McDow v. Dixon*, 138 Ga. App. 338 (226 SE2d 145)) and we find that proof is required that defendant's alleged negligence was the proximate cause of plaintiff's loss.

This latter issue appears not to have been squarely addressed by appellate courts of this state but it is the general rule in the majority of states that in a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. *Schenkel v. Monheit*, 405 A2d 493, 494 (Pa. 1979); *Public Taxi Svc. v. Barrett*, 357 NE2d 1232 (Ill. App. 1976); *Allred v. Rabon*, 572 P2d 979 (Okla. 1977); *Murphy v. Edwards & Warren*, 245 SE2d 212 (N.C. App. 1978); *Drawdy v. Sapp*, 365 S2d 461 (Fla. App. 1978); *Adams, George & Wood v. Travelers Ins. Co.*, 359 S2d 457 (Fla. App. 1978); *Shealy v. Walters*, 256 SE2d 739 (S.C. 1979); *Herston v. Whitesell*, 374 S2d 267 (Ala. 1979); *Sprigg v. Garcia*, 164 Cal. Rptr. 677 (Cal. App. 1980); *Togstad v. Vesely*, 291 NW2d 686 (Minn. 1980); *Freeman v. K&K Car Repair*, 659 SW2d 296, 298 (Mo. App. 1983).

These opinions hold that an attorney is liable only for actual injury that his client has sustained, and an act of negligence alone does not create a cause of action in tort without damages. And last, the alleged negligence of the attorney must be the proximate cause of the damage to the client. See *Freeman v. K&K Car Repair*, supra.

Where the underlying action remains pending, plaintiff can prove

no injury because the action may terminate favorably for the client. *Eddleman v. Dowd,* 648 SW2d 632, 633 (Mo. App. 1983); *Birnholz v. Blake,* 399 S2d 375, 377 (Fla. App. 1981).

In the instant case, the action by plaintiff against GEICO in Georgia remained pending. The trial court found this to be a viable action. We also agree with the trial court that the defendant's affidavits show a basis for estoppel against GEICO and the estate of the tortfeasor.

Florida law holds that the doctrine of estoppel in pais will be applied to prevent the bar of a statute of limitations when "deception is involved." *North v. Culmer,* 193 S2d 701 (4) (Fla. 1967). Actual fraud, bad faith, or intent to mislead is not essential to impose this defense. Id. Further, conduct of the deceased's auto insurance company's agent in negotiating a settlement with the plaintiffs' attorney can give rise to estoppel to assert the limitation in a Florida "nonclaim" statute. Id. Such conduct by the insurance company's agent binds the insured's estate. Id. The Florida court held that because the insurance carrier was authorized to conduct negotiations to effect a settlement of plaintiff's claim, just as the estate would have been bound by such negotiations had they resulted in a settlement, so also is the estate bound when those acts result in an estoppel. Id. p. 704.

Accordingly, an action against the insured's estate was not necessarily barred by the defendant's failure to file within the period set by the Florida "non-claim" statute because of the allegedly deceptive acts of the insurance agent in misleading defendant to believe that the insured was alive. The statute of limitation in bringing a personal injury action in Florida is four years. Fla. Stat. Ann. § 95.11 (3) (a); *Carter v. Cross,* 373 S2d 81, 82 (Fla. 1979). The statute had not run when plaintiff discharged defendant as his attorney.

Hence, pretermitting the issue of whether plaintiff's acts constituted negligence, such acts did not bar the bringing of an action against the tortfeasor's estate and a viable action remained pending against GEICO in a Georgia court. Thus, we agree with the trial court that the proximate cause of plaintiffs' potential loss was not the actions of defendant but their voluntary settlement with the tortfeasor's insurance carrier.

Further, Jimmy Rogers settled within the insurance policy limits, and has suffered no loss because of any act of the defendant.

The trial court did not err in granting summary judgment to defendant and denying plaintiffs' motion for summary judgment.

3. We find no error in the dismissal of plaintiffs' complaint because all three counts were based upon the alleged breach of the attorney's duty to his client, whether it is alleged as negligence in the malpractice count, a breach of contract, or a breach of the fiduciary relationship. Having determined that defendant's actions were not

the proximate cause of the alleged damages suffered by plaintiffs, the counts alleging breach of contract and breach of fiduciary duty must suffer the same result. This enumeration is also without merit.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 2, 1985.

*Charles N. Center*, for appellants.
*Edward L. Savell*, for appellee.