**FIRST DIVISION**
**DOYLE, C. J.**
**BOGGS and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 10, 2016**

# In the Court of Appeals of Georgia

A15A2030. JIM TIDWELL FORD INC. v. BASHUK ET AL.          PE-041

PETERSON, Judge.

Jim Tidwell Ford Inc. ("Tidwell") filed suit against Jeffrey Alan Bashuk and his law firm Bashuk & Glickman (collectively, "Bashuk"), alleging, among other claims, that Bashuk committed malpractice in defending Tidwell in a slip-and-fall lawsuit. Tidwell appeals from a grant of summary judgment to Bashuk in the malpractice case, arguing that the trial court erred by (1) deciding that Bashuk was entitled to judgmental immunity; (2) ruling that Tidwell's settlement of the underlying case barred its claims against Bashuk; (3) concluding that Tidwell's breach of fiduciary claim was duplicative of the malpractice claim; and (4) finding that Tidwell's failure to support its response to Bashuk's motion for summary judgment with specific references to the record was a basis for granting the motion

. Because the trial court correctly held that Tidwell's settlement of the underlying suit against it barred both its malpractice claim and its breach of fiduciary duty claim, we affirm the grant of summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, this malpractice lawsuit stems from a personal injury suit brought against Tidwell by Charles Chase in federal court . Chase, who was 78 years old at the time of the incident that gave rise to his suit, contended that Tidwell was responsible for him falling off a platform while a customer at Tidwell's automobile dealership . Tidwell engaged Bashuk to defend it in the lawsuit . A jury found in Chase's favor and returned a verdict for $1,083,067.20, reduced based on the jury's apportionment of 25 percent of the fault to Chase . Retaining another firm to handle the appeal, Tidwell filed a notice of appeal of the verdict to the U.S. Court of Appeals for the Eleventh Circuit . In August 2012, however, the dealership settled the case for $600,000 before briefing the appeal .

Tidwell subsequently filed this lawsuit . Tidwell claimed that Bashuk failed to obtain and properly present evidence, including expert testimony and medical records, to show that Chase's fall was caused by a preexisting medical condition . Specifically, Tidwell complained about alleged trial preparation failures by Bashuk regarding evidence that Chase suffered from a preexisting neurological condition called peroneal neuropathy (PN), sometimes referred to in this litigation and the underlying litigation by the name of one of PN's symptoms, "foot drop."[1] Tidwell contended that, due to failings by Bashuk, the judge in the underlying case ruled that Lorin Freedman, a doctor who had examined Chase at Tidwell's behest, couldn't testify about Chase's PN . Tidwell also claimed that Bashuk committed malpractice by failing to obtain some of Chase's medical records that would have showed his PN was more severe than he acknowledged at trial .

After discovery, Bashuk moved for summary judgment, arguing among other things that the complained-of actions were tactical decisions that fell under the umbrella of judgmental immunity . The trial court granted the motion, rejecting the malpractice claims on three alternative bases. First, the trial court said that Tidwell's

_____

[1]In his testimony, Chase described his condition as involving his foot "slap[ping]" on the pavement.

"failure to specify the evidence in the record upon which it relies is fatal to its position that summary judgment should be denied." The trial court nevertheless then considered the merits of Tidwell's claims, concluding they must fail under the doctrine of judgmental immunity. Alternatively, the trial court said Tidwell could not show that any malpractice by Bashuk proximately caused its damages, because it settled the underlying case while it still had a viable appeal. Finally, the trial court granted summary judgment on Tidwell's claim of breach of fiduciary duty, saying that claim was "duplicative" of the malpractice claim and that, even if the breach of fiduciary duty claim were not duplicative, it would not have survived summary judgment for the same reasons that Tidwell's malpractice claim was being dismissed.[2] Tidwell contends on appeal that all of these conclusions were in error.

1.     Bashuk argues that our analysis of Tidwell's appeal should begin and end with the trial court's holding that Tidwell's settlement of the underlying case bars its malpractice claim. We agree.

In order to prevail on a legal malpractice claim, a plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to

---

[2]Employing this same analysis, the trial court also granted summary judgment to the defense on Tidwell's claims of breach of contract and breach of good faith and fair dealings. Tidwell does not appeal the trial court's ruling on these claims.

exercise ordinary care, skill, and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (4) (411 SE2d 370) (1991) (citation omitted). "A claim for legal malpractice is sui generis insofar as the plaintiff's proof of damages effectively requires proof that he would have prevailed in the original action but for the act of the attorney charged with malpractice." *White v. Rolley*, 225 Ga. App. 467, 468 (1) (484 SE2d 83) (1997) (citations and punctuation omitted). "In a case where a plaintiff's pending claims remain viable despite the attorney's alleged negligence, the plaintiff severs proximate causation by settling the case, an act which makes it impossible for his lawsuit to terminate in his favor." *Duncan v. Klein*, 313 Ga. App. 15, 20 (1) (720 SE2d 341) (2011) (citation and internal punctuation omitted). *See also Mauldin*, 201 Ga. App. at 518 (4). A claim is "viable" if "further litigation of that claim may lead to a favorable result as of the time prior counsel was dismissed from the case." *White*, 225 Ga. App. at 468 (2) (citation, punctuation, and emphasis omitted). "Applying this concept to limit recovery necessarily involves a policy decision that, for various reasons including the intervening act of a third person, the defendant's conduct is too

remote from the injury to attach liability." *Id.* at 470 (2) (citations omitted).[3] "While this policy decision is usually left to a jury, in plain and undisputed cases the court may make the determination as a matter of law." *Id.* (citations omitted).

Here, having engaged another firm to handle its appeal, Tidwell declined to pursue the matter further, settling before the appeal had been briefed. Thus, the question for this court is whether the appeal made the case viable for purposes of the rule that settlement of a viable underlying claim severs proximate cause. If it did, the decision to settle means Tidwell cannot prove that any negligence by Bashuk caused it injury. Our precedent counsels that a claim is considered viable for these purposes as long as further litigation "may lead to a favorable result." *Id.* at 468 (2). Contrary to Tidwell's arguments, there is no requirement of certainty that the client ultimately would have won the underlying case. *See id.*

The trial court in Tidwell's malpractice case found that the appeal Tidwell declined to brief "may ultimately have led to a reversal" that would have permitted a retrial of Chase's case . We agree. Although Tidwell never briefed its appeal, an

---

[3]Other policy considerations might suggest a different rule. A rule that requires would-be legal malpractice plaintiffs to exhaust all possible appeals in the underlying matter would appear to force those parties to risk increasing their own damages just so they can later pursue an uncertain malpractice remedy. However, binding precedent provides the rule we employ here.

email from Bashuk to Tidwell's in-house counsel set forth several bases for appeal . Speaking for himself and another lawyer brought in as co-counsel for Tidwell prior to trial, Bashuk said in the email that the two lawyers believed the trial judge in Chase's case had committed reversible error by limiting the testimony of both Freedman (the doctor whom Tidwell had hired to examine Chase) and Marvin Royster, one of Chase's treating physicians . At the start of the trial in Chase's case, Chase's attorney objected to testimony by Freedman on the basis that he had not been identified by Tidwell as an expert witness and that his independent medical examination of Chase was meant to determine whether Chase had dementia, not to explore his PN . Via argument by Bashuk, Tidwell responded that Chase's counsel was present for Freedman's examination of Chase and had received the doctor's report . Bashuk told the trial judge that the defense had "absolutely no problem with withdrawing any hypothetical question that was offered to Dr. Freedman[.]"[4] But, Bashuk suggested, even if Freedman were not able to testify as an expert witness, he should be allowed to testify about Chase's PN as a lay witness, based on his observations and experience as a physician, adding that Freedman could be

---

[4]Shortly thereafter, Bashuk told the judge that Freedman should be permitted to testify "either as a fact witness or an expert."

considered a treating physician under the law . But the trial judge ruled that he would limit Freedman's testimony to the doctor's finding that Chase did not have dementia .

The trial court that later heard Tidwell's malpractice case held that the judge who heard the underlying personal injury case may have erred by preventing Freedman from testifying as a fact witness as to knowledge he may have obtained through his examination of Chase. As explained by the trial court in the malpractice case, Eleventh Circuit case law draws a distinction between expert and lay testimony by a physician. *See Williams v. Mast Biosurgery USA Inc.*, 644 F.3d 1312, 1316-18 (11th Cir. 2011) (finding that products liability plaintiff's treating physicians cannot testify that a defective medical product was found in her abdominal cavity). A physician may offer lay testimony if he or she testifies about observations based on personal knowledge, including the treatment of a party. *Id.* at 1317 (citation omitted). However, if a physician's testimony is based on a hypothesis, then it is expert testimony that must comply with federal law governing such testimony, including Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell*

*Dow Pharmaceuticals Inc*., 509 U. S. 579 (113 SCt. 2786, 125 LEd2d 469) (1993).

*Id.* at 1317-18.[5]

Based on this case law, it appears at least possible that the Eleventh Circuit may have reversed the verdict in Chase's favor and granted Tidwell a new trial. Although "[d]istrict courts have broad discretion to exclude untimely disclosed expert-witness testimony[,]" *Chapman v. Proctor & Gamble Distributing LLC,* 766 F.3d 1296, 1315 (11th Cir. 2014) (citation omitted), the trial judge who heard Chase's case did not merely exclude any expert testimony Freedman might have offered on the cause of Chase's fall and injuries. He barred Freedman from talking about Chase's PN at all, including what Freedman might have observed in examining Chase. That testimony would appear to fall squarely within the Eleventh Circuit's definition of lay testimony. Moreover, the exclusion of Freedman's testimony on PN may have been

---

[5]*Williams* addresses the issue in the context of a "treating physician." *Williams*, 644 F.3d at 1316. When Chase's attorney protested in the underlying case that Tidwell was asking the judge to allow Freedman to testify as a treating physician, even though the doctor had testified in his deposition that he was not, Bashuk responded that although Freedman's categorization was "irrelevant," the doctor would meet the definition of "treating physician" because he had given Chase medical attention by taking a history, examining him, and giving a proposed treatment plan. Regardless of whether Bashuk was correct, it is possible that the Eleventh Circuit would have applied its rule articulated in *Williams* to conclude that Freedman should have been allowed to testify as to his personal observations of Chase.

significant given that, at trial, Chase suggested he was not experiencing problems with PN at the time of his fall .

Tidwell complains on appeal that the trial court in his malpractice case relied on *Williams*, a case not cited in Bashuk's summary judgment brief or at the hearing on that motion , without giving it an opportunity to respond . Tidwell correctly notes that a plaintiff need not respond to issues that are not raised in the motion for summary judgment. *See Knight v American Suzuki Motor Corp.*, 272 Ga. App. 319, 325 (2) (612 SE2d 546) (2005). However, Bashuk's summary judgment brief did argue that the malpractice claim was barred by Tidwell's settlement in the face of a potentially viable appeal, and the brief referenced as an example the trial court's ruling on Freedman's testimony in the underlying trial .[6] We are aware of no authority that says a grant of summary judgment may be based only on case law cited by the movant. *See Dental One Assocs. v. JKR Realty Assocs.*, 269 Ga. 616, 617 (1) (501

---

[6]Specifically, the brief pointed to the possibility that Tidwell might contend on appeal that it was error for the trial court that heard Chase's case to preclude Freedman from offering opinion testimony that Chase's PN made him more likely to fall. The trial judge in this case identified the exclusion of Freedman's testimony on PN as a fact witness as a possible basis for reversal of the verdict . Even if this is not exactly the same potential appellate argument identified in Bashuk's summary judgment brief, we find that the brief was sufficient to put Tidwell on notice that Bashuk was contending Tidwell might have had a viable appeal related to limitations on Freedman's testimony.

SE2d 497) (1998) ("It is the evidence of record, not the assertions and objections made by counsel at the hearing, which determines the validity or invalidity of the grant of summary judgment."). Moreover, Bashuk, acting as Tidwell's attorney, cited *Williams* in the underlying case as authority that Freedman's testimony should not be limited . The transcript of that argument was included as an exhibit to an affidavit by Tidwell's in-house counsel, submitted in this case . Therefore, Tidwell cannot complain that it was unaware of this case law supporting a possible basis for appeal. The trial court properly granted summary judgment on the malpractice claim based on Tidwell's settlement of the underlying case.

2. Given that conclusion, we need not consider the appellant's challenges to the other bases for the trial court's decision to grant summary judgment on the malpractice claim. However, Tidwell also has appealed the grant of summary judgment on its breach of fiduciary duty claim. It argues that this claim, because it is based on evidence that Bashuk intentionally misrepresented and concealed facts to hide his negligence, must be considered separately from its malpractice claim. However, proximate cause also is an element that must be proven to recover under a breach of fiduciary duty theory. *See SunTrust Bank v. Merritt*, 272 Ga. App. 485, 489 (2) (612 SE2d 818) (2005). Tidwell's decision to settle the case means it cannot

11

prove proximate cause to support its breach of fiduciary claim. *See Rogers v. Norvell*, 174 Ga. App. 453, 458-59 (3) (330 SE2d 392) (1985) (physical precedent only) (plaintiffs' settlement of underlying action also demands dismissal of breach of fiduciary duty claim for lack of proximate cause).

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur*.