**SECOND DIVISION**
**BROWN**
**GOSS and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2019**

# In the Court of Appeals of Georgia

A18A2012. LALONDE v. TAYLOR ENGLISH DUMA, LLP et al.   GS-074

A18A2013. TAYLOR ENGLISH DUMA, LLP et al. v. LALONDE.   GS-075

GOSS, Judge.

These appeals stem from the trial court's grant of summary judgment to the law firm Taylor English Duma, LLP and one of its partners, Michael H. Trotter, in a legal malpractice action. Their client was engineer and medical device inventor Michael Lalonde. Lalonde sued his former attorneys, arguing that they breached the standard of care by drafting a contract which permitted the investor and majority owner of a company in which Lalonde held a minority share to unilaterally dissolve the company, damaging Lalonde financially.[1] In Case No. A18A2012, Lalonde argues

---

[1] Lalonde also sued Taylor English attorney Aaron Kowan, who was dismissed with prejudice, by consent, and is not party to this appeal.

that the trial court erred in granting summary judgment to the defendants. In Case No. A18A2013, Taylor English and Trotter argue that the trial court erred in denying their motions to exclude expert testimony. The cases are consolidated for our review. Finding no error in Case No. A18A2012, we affirm. We dismiss as moot the appeal in Case No. A18A2013.

*Case No. A18A2012*

In a multi-part enumeration, Lalonde argues that the trial court erred in granting summary judgment to Taylor English and Trotter.

We conduct a de novo review of a trial court's grant or denial of a motion for summary judgment to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. We view the evidence and reasonable inferences drawn from it in favor of the nonmoving party. *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

So viewed, the evidence shows that Lalonde invented small, portable, continuous positive airway pressure ("CPAP") devices designed to treat sleep apnea. Lalonde provided his CPAP technology and related patents to a Delaware limited liability company, called Deshum Medical, LLC, in exchange for a one-third ownership interest in Deshum. The contributing members of Deshum were Lalonde,

as inventor; and PBM Capital Investments, LLC, with president Paul Manning, as investor. PBM agreed to provide $5 million to Deshum in return for a majority, two-thirds ownership interest in the company.

Lalonde retained Trotter and his firm, Taylor English, and they drafted the Deshum Operating Agreement and related documents putting together the business deal between Lalonde and PBM. Lalonde argues on appeal that throughout the process of crafting the Operating Agreement, he told his lawyers that he wanted his ownership rights protected. Under the Operating Agreement, Deshum's initial three-member Board of Managers consisted of Manning and Sean Stalfort from PBM, and Lalonde. The Operating Agreement, as executed, provided that "[n]otwithstanding anything to the contrary, contained in this Article . . . or any other term or provision of this Agreement," under § 6.03, neither the Board, nor any manager, could undertake various actions without the consent of a "Super Majority of the Board," which at that point in time meant all three managers. However, although the Operating Agreement at § 6.03 (g) provided that a Super Majority of the Board was needed to dissolve the company, it also provided at § 11.01 that Deshum could be dissolved under any one of three scenarios: "(a) the decision of the Board in its sole discretion; (b) the election of the Members holding a Required Interest, *or* (c) the

entry of a final decree of judicial dissolution[.]" (Emphasis supplied.) The Operating Agreement defines "Members" holding a "Required Interest" as those owning more than 50 percent of the "issued and outstanding Units of the Company." Lalonde held about one-third of the units, and PBM held the remaining two-thirds.

On January 22, 2013, following disputes between Lalonde and Manning, PBM fired Lalonde. On March 20, 2013, the Board meeting minutes state that at a special meeting of which Lalonde was notified but did not attend, Manning announced that PBM's $5 million investment had been almost exhausted because the CPAP device, which was supposed to have been in the final stages of development according to Lalonde's representations, was not in workable form and needed further development. Manning said that it was "highly unlikely" that PBM would invest more money in the device because by February 2013, about $4.3 million of the $5 million already had been spent, and the remaining money would run out in a few weeks. Deshum Board minutes averred that $4.8 million had been spent by the end of April 2013, and that the company would run out of money by the end of May 2013. Lalonde, by contrast, contends that once PBM realized that FDA approval of the CPAP device was imminent, PBM began trying to force him out.

PBM issued a letter of dissolution for Deshum under § 11.01 of the Operating Agreement in April 2013, stating that the company "will soon have exhausted its capital reserves and that, under present circumstances, it is not possible for [Deshum] to raise additional capital." As outlined above, § 11.01, option (b), provided for dissolution of the company by vote of unit holders holding a "Required Interest," that is, more than 50 percent of the company's outstanding units, and Lalonde held only a minority interest. In May 2013, the Deshum Board, with Lalonde participating by telephone and dissenting, voted that upon dissolution, the company's assets would be distributed "in kind" to Deshum members based upon their fractional rights under the Operating Agreement. The Board, again with Lalonde dissenting, adopted a dissolution plan on August 22, 2013, and remaining assets were transferred on or about that day to Human Design Medical, LLC ("HDM"). HDM was owned by PBM and The Paul B. Manning 1999 Irrevocable Trusts. Manning was HDM's chief executive officer. HDM then began marketing the CPAP device, acquired two foreign companies with marketing capability, and later sold the companies and devices to another foreign company.

In 2015, Lalonde filed the instant lawsuit against Trotter and Taylor English, arguing that they committed legal malpractice in drafting an Operating Agreement

which allowed PBM to dissolve Deshum unilaterally, thus injuring Lalonde financially. Trotter and Taylor English moved for summary judgment, arguing, among other things, that the attorneys breached no duty to Lalonde and that Lalonde was unable to prove causation. The trial court granted their motion. In so doing, it relied upon the Georgia legal malpractice standard, as does this Court:

> In a legal malpractice action, the plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. With respect to the 'ordinary care, skill and diligence' element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of sill and care, *as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances*.

(Citations and punctuation omitted; emphasis in original.) *Allen v. Lefkoff, Duncan, Grimes & Dermer, P. C.*, 265 Ga. 374, 375 (2) (a) (453 SE2d 719) (1995). The parties do not dispute the first element of the standard, and we need not address it.

Contrary to Lalonde's assertions on appeal, the trial court specifically stated that it "*does not* hold that Defendants violated their standard of care." (Emphasis supplied.) Rather, the trial court found that breach of the standard of care and

6

causation are separate inquiries, citing *Rogers v. Norvell*, 174 Ga. App. 453, 457-458 (2) (330 SE2d 392) (1985).[2] The trial court essentially pretermitted any finding as to attorney malpractice, and instead determined that Lalonde "has not shown, and cannot uphold his burden to show, that [Taylor English and Trotter] were the proximate cause of his damages and, therefore, his legal malpractice claim fails as a matter of law." Lalonde filed the instant appeal from that order. We find no error.

1. Lalonde argues that the trial court erred in granting summary judgment to Trotter and Taylor English by finding that Lalonde broke the chain of causation and waived his claims against his former counsel by settling a lawsuit he filed in Delaware Chancery Court against PBM and Deshum.

Lalonde's Delaware Chancery Court petition is dated May 21, 2013,[3] after Deshum issued letters of dissolution in April 2013, but before the company had actually dissolved. Lalonde did not seek to stop the dissolution in Chancery court. Rather, and significantly, he also sought dissolution. However, he sought judicial dissolution instead of the majority unit holder dissolution that PBM had initiated. A

---

[2] *Rogers*, supra, originally was physical precedent, but as recognized in *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (4) (411 SE2d 370) (1991), it has been cited with approval and approved in a line of subsequent cases.

[3] The record does not appear to contain a file-stamped copy of the petition.

7

final decree of judicial dissolution is one of the methods for which the Operating Agreement provides under § 11.01, option (c).

In the petition, Lalonde argued that PBM had violated the Operating Agreement and his employment agreement, and that because of animosity and pending litigation,[4] "the [m]anagers are unable to carry out the business of the [c]ompany." In his cause of action for judicial dissolution, Lalonde alleged that "[i]t is not reasonably practicable for Deshum to continue to operate in accordance with the Operating Agreement[,]" and "Deshum lacks the financial means to continue in operation. PBM is unwilling to invest any additional funds . . . and the PBM Managers have determined that Deshum will be unable to find third-party investors . . . based in part on the allegations made by PBM in its lawsuit against Lalonde."

In November 2013, however, Lalonde entered into a settlement and release with PBM, HDM, and Deshum. He received $310,000 and the dismissal of the two lawsuits PBM and Deshum had filed against him in exchange for his dismissal of the Delaware suit, and his agreement not to sue Deshum, PBM, and related parties. Of the

---

[4] As Lalonde outlined in the Delaware action, PBM had sued him in federal court in Virginia for, among other things, fraud and Securities and Exchange Act violations; and had also sued him in a Virginia circuit court for breach of his employment agreement.

overall $310,000 settlement, Lalonde was paid $140,000 "as consideration for the sale of his membership interests in Deshum, a long term capital asset[,]" and $170,000 for expense reimbursement, with $80,000 of that paid directly to Lalonde's attorney in the Delaware action for legal fees. Lalonde also granted HDM unrestricted licensing for "any technology, information, invention or idea" related to, among other things, his CPAP physical devices, laboratory prototypes, or actual products.

The trial court in the instant case found that in settling the Delaware action, Lalonde severed the proximate causation between his claimed damages and any negligence on the part of his lawyers because his claims against Deshum and PBM were still viable when he settled, and because it was possible that further litigation would have yielded a favorable result. We find no error.

To prevail in a legal malpractice claim, "the alleged negligence of the attorney must be the proximate cause of the damage to the client." (Citation omitted.) *Rogers*, 174 Ga. App. at 457 (2). By settling a claim that is viable, despite the attorney's alleged negligence, the client severs proximate cause because it is impossible for the claim, through an underlying lawsuit, to terminate in the client's favor. *Jim Tidwell Ford, Inc. v. Bashuk*, 335 Ga. App. 668, 670-671 (1) (782 SE2d 721) (2016) (client's settlement of slip-and-fall case, before viable appeal had been briefed in that slip-and-

9

fall action, precluded finding of proximate cause required to support legal malpractice action). "A claim is considered 'viable' if further litigation of that claim *may* lead to a favorable result as of the time prior counsel was dismissed from the case." (Citation and punctuation omitted; emphasis supplied.) Id. at 670 (1). Accord *Rogers*, 174 Ga. App. at 457 (2) (where "the underlying action remains pending, plaintiff can prove no such injury because the action may terminate favorably for the client") (citations and punctuation omitted).

As Lalonde points out, unlike the instant appeal, almost all the legal malpractice cases upon which the trial court relies – and indeed which exist in Georgia case law – involve a client's allegation that counsel malpracticed in underlying litigation, followed by the client settling that same litigation before a judge or jury renders a decision. In the instant case, there was no underlying litigation about the Operating Agreement/pending dissolution when Lalonde filed the Delaware action. He argues that he filed the Delaware action because he believed his attorneys had malpracticed in drafting the Operating Agreement. Importantly, however, he did not file suit to stop the dissolution. Rather, his lawsuit *also* sought to dissolve the company, albeit via a different legal methodology, and in his verified petition, he

10

stated that Deshum could not continue to exist because of financial problems and manager infighting.

In attempting to argue that this settlement does not sever causation, Lalonde tries to distinguish our precedent by relying almost exclusively upon the rationale in a non-binding, unpublished order from a federal trial court. See *Polsinelli P. C. v. Genesis Biosciences, Inc.*, 2016WL7365200 (N. D. Ga. Order, decided January 26, 2016). In *Polsinelli*, after a law firm sued its client for unpaid legal bills, the client counterclaimed for legal malpractice. The client contended that, among other things, the firm negligently drafted a stock purchase agreement and related acquisition documents in a deal where the client bought a corporation and fermentation tanks. Id. at *1-*2 (I) (A) and *3 (III). Disputes arose, however, and the seller sued the client, who was the buyer; in a separate action, the client sued the seller. The client ultimately settled both suits. Id. at *2 (I) (A). The law firm moved for summary judgment on the client's malpractice counterclaim, id. at *2 (I) (B), arguing that the settlements broke the causal chain between the alleged malpractice and any damages. Id. at *4 (IV).

The clients argued that Polsinelli's malpractice caused the litigation they ultimately settled, and asked for damages including the attorney fees arising from that

litigation and incurred "long before settling the Georgia cases." Id. The federal trial court denied summary judgment to the law firm, finding that an act occurring after the client sustained damages cannot have retroactively severed causation, id., and found that "nothing suggests [the clients] in any way voluntarily subjected themselves to any damages that may have been caused by Polsinelli's negligence." Id. at *5 (IV). The *Polsinelli* court found that"[e]ven assuming [the client] would have ultimately prevailed on their claims against the [s]ellers in the Georgia lawsuits, the [client was] nevertheless damaged by having *to litigate* in the first place." Id. at *6 (IV) (emphasis supplied).

(a) *Damages from the dissolution of Deshum*. In the instant case, Lalonde is primarily, though not exclusively, seeking damages *from the dissolution* of the company rather than from "having to litigate in the first place." Id. He sought dissolution, on his own terms by filing the Delaware lawsuit before the company actually was dissolved. He argued in his verified petition for dissolution that Deshum lacked the financial resources to continue and could not find third-party investors based, blaming this injury, in part, on a lawsuit PBM had filed against Lalonde before either party sought dissolution. Although Lalonde argued a number of damages claims below, on appeal, he reiterated damages claims only as lost business

12

opportunities resulting from the dissolution of Deshum, as well as three other claims, as will be explained more fully in Division 1 (b), (c) and (d), below. We begin with his argument that he is seeking one-third of the lost business opportunities stemming from Deshum's dissolution without his consent.

Our own precedent provides more on-point guidance on Lalonde's claim in this particular set of facts than does *Polsinelli*. In *Mauldin*, 201 Ga. App. 514, supra, the plaintiff-client was terminated by his employer and hired an attorney to file an "appeal for investigation" from that termination. The attorney filed the document, but the postmark was unclear and the employer concluded it was untimely. Id. at 515-516. The administrative board tasked with determining whether the filing was timely adjourned without doing so, id. at 515-516, and the question of whether the employer's decision as to timeliness was legally correct was never answered and the client never pursued a decision. Id. at 518 (4). The client sued the lawyer for malpractice over the alleged missed filing deadline, and we affirmed a grant of summary judgment to the attorney. In doing so, this Court found that because "one of the necessary elements in a suit for legal malpractice is proof that the attorney's negligence proximately caused the client's damages, and [the client] *has negated that element by his election not to pursue independent judicial action* against [the

13

employer] to resolve the issue of [the damage the client claims his attorney caused], the grant of summary judgment was correct." (Citation and punctuation omitted; emphasis in original and emphasis supplied). Id.

The posture of the case in the instant appeal, while not identical to *Mauldin*, is analogous in that Lalonde had viable claims, including but not limited to his allegations in the Delaware action, but he "elected not to pursue independent judicial action[.]" *Mauldin*, 201 Ga. App. at 518 (4).[5] Lalonde's own legal malpractice expert, Patrick Jones, deposed that the Operating Agreement was, in parts, ambiguous and that the interpretation of those ambiguities would be a matter of law for a court. If Lalonde had chosen to continue to litigate, rather than to settle, and if he had won, "it would have been indisputable that the malpractice did not cause" his damages. See *Polsinelli*, 2016WL7365200 at \*6. *Jim Tidwell Ford*, 335 Ga. App. at 670-671 (1) (client's settlement of slip-and-fall case, before viable appeal had been briefed, precluded finding of proximate cause required to support legal malpractice action).

---

[5] The trial court's decision in the instant case is not merely limited to issues related to the return of Lalonde's capital contribution, which is not at issue in this appeal, but encompasses "all the consequences associated with the distribution to HDM" and, as the trial court found, in the settlement, Lalonde "was paid for his interest in Deshum. If he believed he was not getting the value of Deshum's corporate opportunities, he had the litigation to pursue that claim."

14

Similarly, in *Rogers*, supra, the plaintiffs were injured in an automobile accident and retained an attorney to sue the other driver. *Rogers*, 174 Ga. App. at 453. The plaintiffs ultimately discharged that attorney, and hired another lawyer, who settled their lawsuit. The plaintiffs then sued their first lawyer for malpractice, arguing that he failed to file their action within the statute of limitation. Id. at 455. This Court upheld a grant of summary judgment to the first attorney, finding that at the time the plaintiffs settled, they had a viable claim in a Georgia court, *and* that they could also potentially have filed suit in Florida. Id. at 458 (2). The *Rogers* court thus found that "the proximate cause of plaintiffs' potential loss was not the actions of [the lawyer] but their voluntary settlement with the tortfeasor's insurance carrier." Id. at 458 (2). In the instant action, Lalonde severed proximate cause in that, before Deshum was dissolved, he filed suit – *also seeking to dissolve Deshum* – and then elected not to pursue his viable claims and settled the Delaware action. We find no error.

(b) *The loss of the fair market value of Lalonde's invention.* As an "alternative cause of action" to his claim for damages stemming from the dissolution of Deshum, Lalonde seeks the loss of the fair market value of the technologies he contributed to Deshum. We note that in his settlement with PBM, Lalonde granted to HDM an

15

irrevocable, perpetual, royalty-free license to use or sell any defined technology or invention of his, or any physical device, actual product, or laboratory prototype related to sleep-disordered breathing.

On appeal, Lalonde argues that the trial court erred in not addressing this alternate claim in its order on summary judgment. Because we have determined that in settling the Delaware action, Lalonde severed the causation between any negligence on the part of his attorneys and his damages, the trial court did not err in failing to address his claim for the loss of the fair market value of his invention.[6]

(c) *The $58,000 Lalonde paid Trotter and Taylor English to draft the Operating Agreement.* Lalonde argues that the trial court erred in its order on summary judgment by not addressing his claim for the $58,000 in attorney fees he paid to Trotter and Taylor English for drafting the Operating Agreement.

---

[6] We note that Trotter and Taylor English contend that Lalonde did not claim a loss of fair market value from his invention below. Although Lalonde points to his amended complaint in an attempt to show that he did seek loss of fair market value below, the amended complaint instead seeks "compensation" for his invention, his ownership interest in Deshum, and his investment. Lalonde himself acknowledges on appeal that, even though he filed an out-of-time motion for summary judgment on this issue, the trial court did not rule on that motion and the claim for fair market value "was not ripe for decision on summary judgment by the trial court."

In support of his argument on appeal, Lalonde cites generally and with minimal argument to a case involving a cause of action for wrongful pregnancy/wrongful conception, in which the Supreme Court found that damages for expenses from the unsuccessful medical procedure could be recoverable. *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441, 443 (2) (314 SE2d 653) (1984). Lalonde cites to no authority on point regarding attorney fees stemming from an allegation of legal malpractice where, as here, the trial court specifically stated that it was *not* finding that Lalonde's attorneys breached the standard of care. We find no error.

(d) *The $80,000 legal fees paid to Lalonde's attorney in the Delaware action*. Lalonde raises briefly, but does not enumerate as error, a claim for $80,000 in legal fees paid to his lawyer in the Delaware action. He presents no real argument and no citations to the record or to legal authority, and he does not show that this contention was raised or ruled upon below. We will not consider this contention. *Shelley v. Towne of Tyrone*, 302 Ga. 297, 308 (3) (806 SE2d 535) (2017) (not addressing matters raised for the first time on appeal). Court of Appeals Rule 25 (c) (2) (i) (we will not consider unsupported claims of error). We note also that part of Lalonde's settlement of the Delaware Chancery Court action involved PBM and Deshum's payment of $80,000 directly to his attorney.

17

2. In an enumeration which contains no citation to legal authority, Lalonde argues that the trial court erred in finding that he cannot show that the lawyers' drafting of the Operating Agreement proximately caused his damages and in finding that he failed to point to a genuine issue of fact showing that PBM *actually would have signed* an Operating Agreement contract that required Lalonde's consent for dissolution under the "Required Interest" provision and under the majority unit holder provision of § 11.01.

In *Szurovy v. Olderman*, 243 Ga. App. 449 (530 SE2d 783) (2000), a case in which a client sued her attorneys for legal malpractice in her divorce settlement, which did not contain an alimony provision, id. at 449-450, this Court found that because the client "failed to show that she could have negotiated a better agreement or that she would have obtained better results at trial, she has failed to establish damages and proximate cause." (Footnote omitted.) Id. at 452. A similar situation is present in this appeal.

It is clear from the record that Lalonde and his lawyers at Taylor English and PBM's lawyers at Blank Rome, over a number of months, went through many negotiations and traded many versions of the Operating Agreement. It is clear that part of the negotiations related to Super Majority approval (i. e., Lalonde's consent)

18

to various actions, including company dissolution, particularly in the context of §

6.03. In support of his position, Lalonde points to e-mails about and versions of the

contract draft as it existed in late February 2011. However, Taylor English attorney

Aaron Kowan[7] wrote, in an e-mail, that Blank Rome had agreed to "*most* of my

requests[.]"[8] (Emphasis supplied.) "Most" does not mean "all." Drafts of the contract

from March 2011 still contain the "Required Interest" definition that excluded

Lalonde, as a minority unit holder, from the majority unit holder voting power under

which PBM dissolved Deshum pursuant to §11.01 of the agreement.

Lalonde points us to nothing indicating that PBM ever agreed or would have

agreed to changing the definition of "Required Interest" and/or the wording of

§11.01, which provided for the alternate means of dissolving the company under

---

[7] As noted in n. 1, supra, Kowan is not a party to the instant appeal.

[8] Although Trotter and Taylor English allege generally that Lalonde cannot rely on hearsay statements in the e-mails and memoranda he uses to support his argument in this enumeration, they do not show how they raised or preserved this objection below. OCGA § 24-8-802 ("[I]f a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.")

19

which PBM actually did dissolve Deshum through the majority unit holders' vote and without Lalonde's consent.[9]

PBM's corporate representative and OCGA § 9-11-30 (b) (6) witness, Russell Schundler, deposed that while it was "impossible to speculate what straw is going to break the camel's back" in terms of what PBM would have agreed to in negotiations, when the Operating Agreement was negotiated, PBM believed that § 11.01 gave PBM the right to dissolve the company.[10] Lalonde's claim thus fails as a matter of law, because he cannot show that Trotter and Taylor English were the but-for cause of his damages, in that there is no evidence that his attorneys could have gotten him a better deal, given that "there is no evidence that [PBM] would have agreed to terms more favorable to [Lalonde.]" *Mosera v. Davis*, 306 Ga. App. 226, 232-233 (2) (701

---

[9] To the extent that § 6.03, § 11.01, and related provisions of the Operating Agreement could be read as being in conflict with one another, we note that Lalonde did not litigate issues of contract interpretation below, and the matter is not before us substantively on appeal. Further, the lawyers' views on § 6.03 and the protection it offered to Lalonde is not an indicator of what PBM would have agreed to or actually did agree to.

[10] Although Lalonde argues that Schundler's statements are hearsay because he was not employed by PBM during the contract negotiations, Lalonde, in his own earlier motion for partial summary judgment, relied upon the same statements with which he now takes issue. He cannot now object. See OCGA § 24-8-802.

20

SE2d 864) (2010) (upholding grant of summary judgment to attorneys in malpractice action).

3. In light of our determinations in Divisions (1) and (2), supra, we need not address the remaining contentions of error.

*Case No. A18A2013*

4. In Case No. A18A2013, Trotter and Taylor English argue that the trial court erred in denying their motions to exclude the testimony of Lalonde's expert witnesses. In light of our decision in Case No. A18A2012, the appeal in Case No. A18A2013 is dismissed as moot.

*Judgment affirmed in Case No. A18A2012; appeal dismissed in Case No. A18A2013. Hodges, J., concurs in judgment only. Brown, J., concurs as to Division 2, concurs in the judgment only as to Divisions 1 (a) and (d), 3 and 4 and dissents as to Division 1 (b) and (c).\**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

BROWN, Judge, concurring in part, dissenting in part.

I disagree with the majority's decision to affirm the trial court's order granting summary judgment in favor of Taylor English Duma LLP and Michael Trotter (collectively "Taylor English") on all of Michael Lalonde's claims for legal malpractice against them. I concur in the judgment only to Divisions 1 (a), 1 (d), 3, and 4, dissent with regard to  Divisions 1 (b) and (c), and fully concur with the legal issue expressly addressed in Division 2.[1]

1. I disagree with the majority's application of a proximate cause analysis used in litigation legal malpractice claims to a transactional legal malpractice claim because the measure of damages is different in each of these claims. "Where the alleged malpractice is loss of a claim, the former client's recovery against the former attorney properly is limited by the amount that would have been recovered from the defendant or the potential defendant." *Ware v. Durham*, 246 Ga. 84 (1) (268 SE2d 668) (1980). In cases where the legal malpractice relates to a transaction, such as real estate title examinations or the drafting of contracts, a former client may recover actual damages. Id. See also *Rubin Resources v. Morris*, 237 W. Va. 370, 374-375

---

[1] Other than mooting the issue based upon its holdings in Divisions 1 and 2, the majority opinion does not address Lalonde's argument that the trial court erred by concluding that he could not create a genuine issue of material fact with regard to whether he would have been better off with no deal.

(III) (787 SE2d 641) (2016) ("common areas of transactional malpractice include careless title searches, erroneous tax advice, and sloppy contract preparation" and damages include "lost value, out of pocket expenses, and loss of future expectations") (citation and punctuation omitted). "Proximate cause in a malpractice action requires the plaintiff to demonstrate that but for the attorney's error, the outcome would have been different." (Footnote omitted.) *Studio X v. Weener, Mason & Nathan, LLP*, 276 Ga. App. 652, 654 (624 SE2d 157) (2005). Accordingly, in the context of a litigation legal malpractice case, we have held that "[a] claim for legal malpractice is sui generis insofar as the plaintiff's proof of damages effectively requires proof that he would have prevailed in the original action but for the act of the attorney charged with malpractice." (Citation and punctuation omitted.) *Jim Tidwell Ford, Inc. v. Bashuk*, 335 Ga. App. 668, 670 (1) (782 SE2d 721) (2016). In a litigation legal malpractice case, settlement of an underlying lawsuit that is viable, despite the attorney's alleged negligence, will sever the proximate cause element of a legal malpractice claim because it makes it impossible for the underlying litigation to terminate in his favor. Id. With regard to "viability of a given claim," we have previously explained that this "refers only to the question of whether further litigation of that claim may lead to a favorable result *as of the time prior counsel was dismissed*

2

*from the case*; it does not refer to the mere potential for continued litigation of a claim as a means of demonstrating conclusively the very futility of the effort." (Emphasis supplied.) *Huntington v. Fishman*, 212 Ga. App. 27, 30, n.2 (441 SE2d 444) (1994).

With regard to transactional legal malpractice, a client's later conduct can sometimes result in a break in the proximate cause chain, but the particular facts and circumstances of each case should be considered, keeping in mind the wider array of damages that can be sought in such a case. See, e. g., *Kitchen v. Hart*, 307 Ga. App. 145, 151-152 (1) (704 SE2d 452) (2010) (client conduct in voluntarily assuming full responsibility for loan precluded them from holding attorney liable for drafting error in loan documents); *Crowley v. Trust Co. Bank*, 219 Ga. App. 531, 532 (466 SE2d 24) (1995) (stipulation that guarantor entered into consent judgment obtained for payment of debt and was capable of paying precluded finding that attorney negligence in handling collateral was proximate cause of bank's damages). Compare *Polsinelli PC v. Genesis Biosciences, Inc.*, No. 1:14-CV-00873-ELR, 2016 U. S. LEXIS 178441 at *12-13 (N.D. Ga. 2016) (settlement did not sever proximate cause in legal malpractice case involving business transaction). Additionally, even when litigation resulting from transactional legal malpractice terminates in the former client's favor, the client can still sue for actual damages resulting from the attorney's

malpractice, such as legal fees. *Alston v. Stubbs*, 170 Ga. App. 417, 419-420 (3) (317 SE2d 272) (1984).

Applying the proper standard for the evaluation of proximate cause in this transactional legal malpractice case, I conclude that the grant of summary judgment to Taylor English was proper on Lalonde's claim for lost business opportunities resulting from the dissolution of the company.

2. I disagree with the majority's decision to affirm the trial court's grant of summary judgment to Taylor English on Lalonde's claim for compensatory damages based upon the fair market value of his invention. Lalonde averred that if he had known that PBM could dissolve Deshum without his consent, he "would have walked away from the transaction, kept my inventions and technologies and pursued the collaborative agreement with the Mayo Clinic. . . ." Lalonde's amended complaint alleged that "[a]s a result of Defendants' negligence, [he] lost his interests in the Invention he had worked years to perfect" and "[a]s a proximate result of Defendants' wrongful conduct as aforesaid, Plaintiff has been deprived of millions of dollars of compensation to which he is entitled for his Invention. . . ." In my view, Lalonde's settlement, based upon the adverse position the Operating Agreement placed him in with regard to ownership of the invention and dissolution, should not, standing alone,

4

preclude his claim that he would not have entered into the agreement in the first instance. To the extent the trial court ruled upon this claim in its order, I believe that genuine issues of material fact prevent summary judgment on this claim at this juncture. I therefore dissent to Division 1 (b) of the opinion.

3. In my view, we should reverse the trial court's order, in part, to the extent it granted summary judgment on Lalonde's claim for the $58,000 paid to Taylor English for the draft of the Operating Agreement. The record shows that Lalonde's amended complaint specifically sought "the attorneys' fees he paid," that Taylor English did not seek summary judgment for this portion of Lalonde's damages claim, and that the trial court did not specifically rule upon it. I therefore dissent to Division 1 (c) of the majority opinion.